**No. 26-1166**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

***In Re*** CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY and the CITY OF CHATTANOOGA, TENNESSEE

*Petitioners,*

*v.*

BRYAN BEDFORD, Administrator of the Federal Aviation Administration; and the FEDERAL AVIATION ADMINISTRATION

*Respondents.*

---

# PETITION FOR WRIT OF MANDAMUS TO BRYAN BEDFORD, ADMINISTRATOR OF THE FEDERAL AVIATION ADMINISTRATION, and the FEDERAL AVIATION ADMINISTRATION

---

D. Kirk Shaffer
D. Kirk Shaffer, PLLC
2405 Avenue G
Bay City, TX 77414
615-587-4242 Telephone
kirk@dkirkshaffer.com

June 18, 2026

*Counsel for Petitioners*
*Chattanooga Metropolitan Airport Authority and the City of Chattanooga, Tennessee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................3
INTRODUCTION ........................................................................4
STATEMENT OF THE ISSUE ........................................................................7
JURISDICTION ........................................................................8
PARTIES ........................................................................8
FACTUAL BACKGROUND ........................................................................11
REASONS FOR ISSUANCE OF THE REQUESTED WRIT ........................................17
I. The FAA's failure to act and/or its unreasonable delay is unlawful. ..............17
II. The weighing of the TRAC factors support the issuance of the order from this Court compelling the FAA and its Administrator to fulfill and act upon the FAA's and its Administrator's non-discretionary obligations in Section 757 as requested by the Petitioners in this petition. ....................................................21
RELIEF SOUGHT ........................................................................25
CERTIFICATE OF COMPLIANCE ........................................................................35

# TABLE OF AUTHORITIES

**Cases**


*Ctr. for Biological Diversity*, 53 F.4th at 672 ........................................................25
*Env't Defense Fund, Inc. v. Hardin*, 428 F.2d 1093 (D.C. Cir. 1970) ....................22
*In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413 (D.C. Cir. 2004)...............19
*In re Core Communications, Inc.*, 531 F.3d 849 (D.C. Cir. 2008).................. 19, 21
*In re Ctr. for Bio. Diversity*, 53 F.4th 665 (D.C. Cir. 2022)....................................20
*In re People's Mojahedin Org. of Iran*, 680 F.3d 832 (D.C. Cir. 2012) .................21
*In re Public Employees for Environmental Responsibility*, 957 F.3d 267 (D.C. Cir. 2020) .................................................................................................. 9, 19, 23, 24
*Khan v. Baker*, No. 24-CR-271-RCI, 2025 WL 958312, (D.D.C. Mar. 31, 2025) .25
*Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094 (D.C. Circuit 2003) .....................................................................................................................24
*Sierra Club v. Thomas*, 828 F.2d 783 (D.C. Cir. 1987).......................................22
*Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70 (D.C. Cir. 1984) .. passim


**Statutes**


14 C.F.R. § 139 ........................................................................................................11
2026 Public Acts chapter 978 .....................................................................................6
28 U.S.C. § 1651 ........................................................................................................9
49 U.S.C. § 46110(a) .................................................................................................9
49 U.S.C. § 47101(a)(1)...........................................................................................11
49 U.S.C.§ 47101(a) ................................................................................................25
49 USCA § 47101 ........................................................................................ 5, 17, 25
5 U.S.C. § 555(b) ......................................................................................................24
5 U.S.C. § 706 ......................................................................................................8, 19
5 U.S.C. § 706(1) ......................................................................................................19
FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757(b)..........17
FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757(b)(2))....15
FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757(c)).. 14, 15
FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757)..... passim
FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757(a)(1)) 5, 11
FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757(b)(1)).....5, 11, 14
FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757(d)) ....5, 14
Tenn. Code Ann. § 42-4-101 ......................................................................................9
U.S.C. Title 49 ..........................................................................................................10

## INTRODUCTION

The Federal Aviation Administration ("FAA") Reauthorization Act of 2024, which was signed into law on May 16, 2024, mandates that FAA approval must be obtained for a legislative enactment changing the sponsorship, governance, and/or operational responsibility of a federally obligated public airport to be effective and/or to go into effect if such change is not "consent[ed]" to, and thus "disputed," by such airport's existing sponsor. [See Section 757 ("Disputed Changes of Sponsorship at Federally Obligated, Publicly Owned Airport") of the FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757), codified at 49 USCA § 47101 – Policies, Statutory Notes]. Section 757(d)) states the term "**disputed change of airport sponsorship**" means "**any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for,** a federally obligated, publicly owned airport, including any such change directed by judicial action or **State** or local **legislative action,** where the airport **sponsor of record** initially **does not consent to such change."** (Emphasis added). Section 757(a)(1)) states, in relevant part, that the FAA "shall have the sole legal authority to approve any change in the sponsorship of, or operational responsibility for, the airport sponsor of record to another public or private entity." Section 757(b)(1)) states that "the [FAA] Administrator shall not approve any disputed change of airport sponsorship unless the Administrator receives" one of the following: "(A) written

documentation from the airport sponsor of record consenting to the change in sponsorship or operation; (B) notice of a final, non-reviewable judicial decision requiring such change; or (C) notice of a legally-binding settlement agreement between the parties involved."

The Chattanooga airport is a publicly owned, federally obligated airport. The existing "sponsor of record" of the Chattanooga airport is the Chattanooga Metropolitan Airport Authority (the "Chattanooga Airport Authority"). The Chattanooga Airport Authority is a statutorily recognized agency and "instrumentality" of the City of Chattanooga which is "governed" by a Board of Commissioners (the "Board") comprised of nine members who have been exclusively appointed by the City of Chattanooga, and thus under the control of the City of Chattanooga, since the creation of such municipal agency/instrumentality by the City of Chattanooga in 1985.

In April 2026, the Tennessee legislature passed an amendment to the Tennessee Metropolitan Airport Authority Act, which the Governor of Tennessee signed on May 19, 2026, as 2026 Public Acts chapter 978 which—when effective on July 1, 2026—vacates the entirety of the existing Board of the Chattanooga Airport Authority and provides the State with the right to appoint six of the nine members to the newly composed Board—and thus, the control of—the governance of Chattanooga Airport Authority for no legitimate reason and without any rational

basis (the "Takeover Act") [See copy of Tennessee 2026 Public Acts chapter 978 attached as Exhibit A to the Declaration of James E. Hall ("Hall Declaration") herein. The Takeover Act inarguably constitutes either a change of "sponsorship" and/or a change of the "governance of, or operational responsibility" for the Chattanooga airport currently operated by the Chattanooga Airport Authority, which is currently under the control of the City of Chattanooga.

The FAA has been notified verbally and in writing on multiple occasions of the Chattanooga Airport Authority's and the City of Chattanooga's objection and opposition to the Takeover Act, and that the Chattanooga Airport Authority and the City of Chattanooga thus dispute such changes to the "sponsorship" and/or the "governance of, or operational responsibility" of the Chattanooga airport. Through such communications, the FAA and its Administrator have been requested to act in accordance with its clear duties stated in Section 757 and issue a letter to the State, the Chattanooga Airport Authority, and the City of Chattanooga stating and expressly acknowledging that, consistent and in compliance with Section 757, the FAA recognizes and will continue to recognize the currently existing Board of the Chattanooga Airport Authority and the currently existing governance of such authority pending resolution of the disputed change of sponsorship regardless of whether such resolution occurs before July 1, 2026.

To date, neither the FAA nor its Administrator have acted upon this request which is consistent with and in accordance with the FAA's and its Administrator's duties and obligations stated in Section 757. Because the change of sponsorship and governance resulting from the Takeover Act is currently scheduled to go into effect on July 1, 2026 even though the dispute regarding such change in sponsorship and governance has yet to be resolved and no approval of such changes by the FAA could be thus obtained, the Petitioners have no other remedy other than an order from this Court compelling the FAA and its Administrator to act as required by Section 757 and requested by the Petitioners.

## STATEMENT OF THE ISSUE

Whether the FAA's failure to act and expressly acknowledge that the FAA recognizes and will continue to recognize the currently existing Board of the Chattanooga Airport Authority and the currently existing governance and/or governance structure of such authority pending resolution of the disputed change of sponsorship, constitutes agency action "unlawfully withheld or unreasonably delayed" and "not in accordance with law," 5 U.S.C. § 706 of the Administrative Procedure Act ("APA"), and entitles petitioners to an order compelling the FAA to act and expressly acknowledge, in accordance with Section 757, that the FAA recognizes and will continue to recognize the currently existing Board of the Chattanooga Airport Authority and the currently existing governance and/or

governance structure of such authority pending resolution of the disputed change of sponsorship/governance regardless of whether such resolution occurs before July 1, 2026.

**JURISDICTION**

This Court has jurisdiction over this mandamus petition under the All Writs Act, 28 U.S.C. § 1651, because pursuant to 49 U.S.C. § 46110(a), this Court would have jurisdiction to review the actions of the FAA if the FAA had undertaken the action requested from the FAA but which the FAA has failed to undertake. *See In re Public Employees for Environmental Responsibility*, 957 F.3d 267, 271 (D.C. Cir. 2020) ("Our court has exclusive jurisdiction over mandamus petitions alleging unreasonable agency delay [and/or agency inaction] whenever a statute commits review of the relevant action to the courts of appeals."); *see also Telecomms. Research & Action Ctr. v. FCC*, 750 F.2d 70, 76 (D.C. Cir. 1984) ("TRAC").

**PARTIES**

Petitioner Chattanooga Airport Authority is a legally valid, successfully operated, and flourishing airport authority, and an agency and instrumentality of the City of Chattanooga, in good standing created by the City of Chattanooga in 1985 for the purpose of operating the Chattanooga airport after the City of Chattanooga exercised its option to create such airport authority pursuant to Tennessee Metropolitan Authority Act (Tenn. Code Ann. § 42-4-101, *et seq*). The Chattanooga

Airport Authority is located, along with its principal place of business (the Chattanooga airport), entirely in Chattanooga, Hamilton County, Tennessee.

Petitioner City of Chattanooga, Tennessee is a successfully operated, financially sound, and flourishing municipal corporation of the State of Tennessee located in Hamilton County, Tennessee.

The Chattanooga airport is a publicly owned, federally obligated airport. For the purposes of the FAA Reauthorization Act of 2024 and the matters at issue, primarily Section 757 of that Act, the Chattanooga Airport Authority is the existing "sponsor of record" of the Chattanooga airport. As a legally recognized agency and "instrumentality" of the City of Chattanooga, the Chattanooga Airport Authority (and its airport and the property and assets comprising the airport) are "governed" by the Board, comprised of nine members who have been exclusively appointed by the City of Chattanooga, and thus under the control of the City of Chattanooga, since the creation of such municipal agency/instrumentality by the City of Chattanooga in 1985.

Respondents are the FAA and its Administrator, Bryan Bedford. The FAA exists "to provide the safest, most efficient aerospace system in the world." https://www.faa.gov/about#:~:text=Our%20Mission,aerospace%20system%20in%20the%20world. The FAA's objectives are achieved through both the extensive statutory regime codified at Title 49 of the United States Code and an extensive

regulatory regime codified at Title 14 of the Code of Federal Regulations. For example, 14 C.F.R. § 139 proscribes rules governing the certification and operation of airports in the United States, which like Chattanooga have scheduled air carrier airline service and thus must operate with a heightened level of security and safety. As expressed in the United States Code section which contains and codifies the policies and rules reflected in Section 757, "[i]t is the policy of the United States— (1) that the safe operation of the airport and airway system is the highest aviation priority; … . (See 49 U.S.C. § 47101(a)(1)). Respondent Bedford is responsible for carrying out the FAA's legal responsibilities, including the duties and obligations stated in Section 757 at issue in this petition. (See for example, Section 757 (a)(1) ("the FAA "Administrator shall have the sole legal authority to approve any change in the sponsorship of, or operational responsibility for, the airport sponsor of record to another public or private entity."), and Section 757(b)(1) ("the [FAA] Administrator shall not approve any disputed change of airport sponsorship unless the Administrator receives" one of the following: "(A) written documentation from the airport sponsor of record consenting to the change in sponsorship or operation; (B) notice of a final, non-reviewable judicial decision requiring such change; or (C) notice of a legally-binding settlement agreement between the parties involved.").

Because the change of sponsorship and governance resulting from the States's aforementioned Takeover Act is currently scheduled to go into effect on July 1, 2026

even though the dispute regarding such change in sponsorship and governance has yet to be resolved and no approval of such changes by the FAA could be thus obtained, the Petitioners have no other remedy other than an order from this Court compelling the FAA and its Administrator to act as required by Section 757 and requested by the Petitioners to avoid the abrupt and unnecessary disruption to the continuity of the safe and successful operation of the Chattanooga airport that will result if the changes imposed by Takeover Act are implemented before the disputed changes in sponsorship and governance are resolved and handled in the manner provided by Section 757.

## FACTUAL BACKGROUND

The Chattanooga airport is a publicly owned, federally obligated airport. For the purposes of the FAA Reauthorization Act of 2024 and the matters at issue, the Chattanooga Airport Authority is the existing "sponsor of record" of the Chattanooga airport. As a legally recognized agency and "instrumentality" of the City of Chattanooga, the Chattanooga Airport Authority (and its airport and the property and assets comprising the airport) are "governed" by the Board, whose nine members have been exclusively appointed by the City of Chattanooga since the creation of such municipal agency/instrumentality by the City of Chattanooga in 1985.

The transition of the operation of the Chattanooga airport from the City of Chattanooga to the Chattanooga Airport Authority in 1985 marked a major turning

point for the airport. The transition permitted and empowered the airport leadership to better focus on strategic planning, growth, infrastructure upgrades, and airline recruitment, all of which resulted in steadily increased passenger traffic.

The City of Chattanooga, the Chattanooga Airport Authority, the Chattanooga airport, and its users have reaped the benefits of the steady, locally familiar appointment process and governance through the structure that has been in place since 1985. Despite such success, in April 2026, the Tennessee legislature passed the Takeover Act that will—when effective on July 1, 2026—vacate the entirety of the existing Board of the Chattanooga Airport Authority and provides the State with the power to appoint, and remove without cause, six of the nine members of the Board for no legitimate reason and without any rational basis.

In passing and enacting the Takeover Act the State has ignored and has still not complied with certain requirements of Section 757 of the FAA Reauthorization Act of 2024, *e.g.* obtaining the consent of the current "sponsor" of the Chattanooga airport—the Chattanooga Airport Authority—and obtaining approval of the FAA in accordance with the clear requirements of Section 757. The FAA's approval must be obtained in order for the State to change the governance structure of the Chattanooga Airport Authority in the manner contemplated and/or undertaken by the Takeover Act which is to go into effect on July 1, 2026.

The passage and enactment of Section 757 in May 2024 was a response to a number of efforts by state legislators in a number of states (including Georgia, North Carolina, and Tennessee) to seize or effectively shift control of their state's busiest airports from the cities to the state.

Section 757 states, in relevant part, that the FAA "shall have the sole legal authority to approve any [disputed] change in the sponsorship" or change in the "governance of, or operational responsibility" of a publicly owned, federally obligated, airport. Section 757(d) states:

> (d) DEFINITION OF DISPUTED CHANGE OF AIRPORT SPONSORSHIP.—In this section, the term "disputed change of airport sponsorship" means **any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for,** a federally obligated, publicly owned airport, including any such change directed by judicial action or **State** or local **legislative action,** where the airport sponsor of record initially **does not consent to such change**. (Emphasis added).

Section 757 permits the FAA to approve any disputed change in sponsorship or change in the "governance of, or operational responsibility" of an airport only when the existing sponsor (the existing owner/operator of the airport) consents to the change or a court issues a final, non-reviewable order requiring such a change, and requires the FAA to independently confirm that the new sponsor is able to satisfy all pertinent federal requirements. (See Section 757(b)(1) and (c)).

Section 757 states that the FAA may not "evaluate or approve" a disputed change in sponsorship or change in the "governance of, or operational responsibility" of an airport while a legal dispute over the change is pending. (See Section 757(b)(2)).

The Chattanooga airport is a publicly owned, federally obligated airport. The existing sponsor of the Chattanooga airport is the Chattanooga Airport Authority—a statutorily recognized "instrumentality" of the City of Chattanooga.

The Takeover Act would result in a change of "sponsorship" as defined by the act for the Chattanooga airport. The Chattanooga Airport Authority and the City of Chattanooga dispute the changes to the law of Tennessee impacting and changing the "sponsorship" of the Chattanooga airport reflected in the Takeover Act. (See copies of the respective resolutions passed by the Chattanooga Airport Authority Board and the City of Chattanooga disputing the changes to the "sponsorship" of the Chattanooga airport reflected in the Takeover Act, which are included as part of the communications in Exhibit C to the Hall Declaration.

The State actors—Governor Lee, Senate Speaker McNally, and House Speaker Sexton—have been notified in writing of the Chattanooga Airport Authority's and the City of Chattanooga's objection and opposition to the Takeover Act, and that the Chattanooga Airport Authority and the City of Chattanooga dispute the changes to the law of Tennessee impacting and changing the "sponsorship" of

the Chattanooga airport. (See copies of certain written communications amongst the Chattanooga Airport Authority, the City of Chattanooga, and the State (Governor Lee, Senate Speaker McNally, and House Speaker Sexton), attached hereto as Exhibit B to the Hall Declaration.

The FAA has been notified verbally and in writing on multiple occasions of the Chattanooga Airport Authority's and the City of Chattanooga's objection and opposition to the Takeover Act, and that the Chattanooga Airport Authority and the City of Chattanooga dispute the changes to the law of Tennessee impacting and changing the "sponsorship" of the Chattanooga airport. (See copies of certain written communications amongst the Chattanooga Airport Authority, the City of Chattanooga, and the FAA, attached hereto as Exhibit C to the Hall Declaration herein. Through such communications, the FAA and its Administrator have been requested to act in accordance with its clear duties stated in Section 757 and issue a letter to the State, the Chattanooga Airport Authority, and the City of Chattanooga stating and expressly acknowledging that, consistent and in compliance with Section 757, the FAA recognizes and will continue to recognize the currently existing Board of the Chattanooga Airport Authority and the currently existing governance of such authority pending resolution of the disputed change of sponsorship regardless of whether such resolution occurs before July 1, 2026.

To date, neither the FAA nor its Administrator have acted upon this request. Because the change of sponsorship and governance resulting from the Takeover Act is currently scheduled to go into effect on July 1, 2026 even though the dispute regarding such change in sponsorship and governance has yet to be resolved and no approval of such changes by the FAA could be thus obtained, the Petitioners have no other remedy other than an order from this Court compelling the FAA and its Administrator to act as required by Section 757 and as requested by the Petitioners.

As the current and still existing sponsor of the Chattanooga airport, the Chattanooga Airport Authority and the City of Chattanooga have complied with the applicable provisions of Section 757, codified at 49 USCA 47101 – Policies. Accordingly, the Chattanooga Airport Authority and the City of Chattanooga should receive the protections to be provided by the FAA and its Administrator to existing sponsors pursuant to the clear duties imposed upon the FAA by Section 757 when a legislatively enacted change in sponsorship or governance is disputed by the current and still existing sponsor of a public, federally obligated airport.

Based upon information and belief, the State has not complied with the applicable provisions of Section 757 codified at 49 USCA 47101 – Policies. For example, Section 757(b) states, in relevant part:

**(b) Conditions for approval.--**

***

**(3) Technical assistance.**--

**(A) In general.**--Any State or local legislative body or public agency considering whether to take an action (including by drafting legislation) that would impact the ownership, sponsorship, governance, or operations of a federally obligated, publicly owned airport may request from the Administrator, at any point in the deliberative process--

**(i)** technical assistance regarding the interrelationship between Federal and State or local requirements applicable to any such action; and

**(ii)** review and comment on such action.

**(B) Failure to seek technical assistance.**--The Administrator may deny a change in the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport if a State or local legislative body or public agency does not seek technical assistance under subparagraph (A) with respect to such change.

Based upon information and belief, the State did not seek technical assistance from the FAA, as contemplated by the above stated provisions of Section 757, before passing and signing the Takeover Act, and has yet to seek such technical assistance.

## REASONS FOR ISSUANCE OF THE REQUESTED WRIT

### I. The FAA's failure to act and/or its unreasonable delay is unlawful.

The FAA's failure to respond to the Petitioners' request for the FAA to acknowledge prior to the effective date of the Takeover Act, July 1, 2026, that the FAA will "act" in accordance with statutory obligations constitutes agency action

"unlawfully withheld or unreasonably delayed" and "not in accordance with law" under the Administrative Procedure Act. 5 U.S.C. § 706.

The APA, as stated in 5 U.S.C. § 706(1), requires courts to "compel agency action unlawfully withheld of unreasonably delayed," and courts have consistently held that a writ of mandamus is a recognized means and mechanism to satisfy and accomplish such statutory directive. See, for example, *TRAC*, 750 F.2d at 77 (the APA, "indicate[s] a congressional view that agencies should act within reasonable time frames and that courts . . . may play an important role in compelling agency action that has been improperly withheld or unreasonably delayed"); *In re Core Communications, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (the court's jurisdiction and authority to provide mandamus relief in these circumstances is "undisputed"); *In re Am. Rivers & Idaho Rivers United*, 372 F.3d 413, 418 (D.C. Cir. 2004) (this Court issues writs of mandamus "to correct transparent violations of a clear duty to act," and that an agency's "unreasonable delay" presents the type of "extraordinary circumstances" that justifies and warrants mandamus relief). "At some point, promises are not enough; judicial intervention is needed." *In re Public Employees for Environmental Responsibility*, 957 F.3d at 273.

A writ of mandamus is appropriate and should be issued if (1) the agency's delay or inaction violates a clear legal duty, (2) the petitioner has no other adequate means to obtain relief, and (3) particularly if the agency's delay is "egregious." *In re*

*Ctr. for Bio. Diversity*, 53 F.4th 665, 673 (D.C. Cir. 2022). Each of those criteria are satisfied in this case.

The request submitted to the FAA by the Petitioners—and the writ/order requested by the Petitioners in this petition—do not ask or require the FAA or its Administrator to exercise or undertake any discretionary assessment or determination. Instead, the Petitioners requested the FAA to "act" in accordance with the clear statutory mandate and obligation imposed by Section 757 upon the FAA and its Administrator to not approve the change of sponsorship and governance of the Chattanooga airport imposed by the Takeover Act unless or until a resolution of the Petitioners' objections to such change occurs, and to acknowledge that until such resolution is reached, the FAA will "act" in accordance with and fulfill its clear obligations under Section 757 by recognizing the current board membership and governance of the Chattanooga airport so that the clear and overriding purpose of Section 757 is achieved and protections for existing sponsors provided by Section 757 are fulfilled by the FAA and its Administrator.

In light of the approaching July 1, 2026 effective date for the governance changes imposed by the Takeover Act to be purportedly implemented (*e.g.* abruptly vacating the entire nine person Board of the Chattanooga Airport Authority that has successfully managed and safely operated the Chattanooga airport) even though the airport's currently existing sponsors have not consented to such changes and the

"dispute" regarding such governance changes has yet to be resolved between the parties or otherwise, the FAA's failure to respond to the Petitioners' request for the FAA to acknowledge prior to the effective date of the Takeover Act, July 1, 2026, that the FAA will "act" in accordance with aforementioned clear and non-discretionary statutory obligations imposed by Section 757 is egregious and leaves the Petitioners with no other meaningful or effective remedy other than the relief sought in this petition. In light of these particular circumstances, the FAA's promises to respond and to act upon the Petitioners' straightforward and non-discretionary requests for agency action are no longer enough, and the requested intervention by this Court is needed and required for the primary purpose for Section 757 to be fulfilled and not frustrated or eviscerated by the FAA's inaction. See *In re People's Mojahedin Org. of Iran*, 680 F.3d 832,837 (D.C. Cir. 2012) (per curiam) (holding that a "failure to act" that "plainly frustrates the congressional intent . . . cuts strongly in favor of granting [a] mandamus petition.")[1]

[1] Neither Section 757 nor the statutory framework provides a more formal mechanism for urging or the FAA to simply act upon and fulfill its non-discretionary obligations under Section 757. The only avenue for relief for the Petitioners to address the FAA's inaction with respect to the Petitioners 'requests is through this petition and from this Court. See *In re Core Communications*, 531 F.3d at 860 (addressing why the petitioner's appeal to the agency in that case was "not an adequate means to attain the relief it seeks"). If the Court determines that the FAA's inaction and failure to respond to the Petitioners 'requests constitutes a reviewable final agency action, the Petitioners respectfully requests that the Court alternatively treat this petition for writ of mandamus as a petition for review of a final agency

## II. The weighing of the TRAC factors support the issuance of the order from this Court compelling the FAA and its Administrator to fulfill and act upon the FAA's and its Administrator's non-discretionary obligations in Section 757 as requested by the Petitioners in this petition.

In light of the particularly circumstances in this case, primarily the upcoming effective date of July 1, 2026 for the Takeover Act, the weighing of the factors first announced in *TRAC* support a finding that the FAA has unreasonably delayed and/or withheld acting in accordance with its obligations under Section 757 with respect to the requests submitted by the Petitioners to the FAA and support the entry of the order compelling the FAA and its Administrator to fulfill and act upon the non-discretionary obligations imposed upon the FAA and its Administrator in Section 757 as requested by the Petitioners.

For the purpose of guiding a court's assessment of the reasonableness of an agency delay or inaction in fulfilling its statutory duties and obligations, the Court

---

action, or perhaps more appropriately in this particular situation, final agency "inaction." See *Sierra Club v. Thomas*, 828 F.2d 783, 793-794 (D.C. Cir. 1987) (In addition to "unreasonable delay of final action," mandamus relief may also be equitably warranted by inaction which represents "effectively final agency action that the agency has not frankly acknowledged." In those circumstances, "the court can undertake review as though the agency had denied the requested relief and can order an agency to either act or provide a reasoned explanation for its failure to act." (quoting *Env t Defense Fund, Inc. v. Hardin*, 428 F.2d 1093, 1099 (D.C. Cir. 1970). An agency should not equitably avoid mandamus relief by "casting its decision in the form of inaction rather than in the form of an order denying relief" in those circumstances where agency action is unlikely.).

in *TRAC* listed the following six, non-exclusive factors for potential consideration in the assessment of that issue:

> (1) the time agencies take to make decisions must be governed by a "rule of reason," … (2) where Congress has provided a timetable or other indication of the speed with which it expects the agency to proceed in the enabling statute, that statutory scheme may supply content for this rule of reason, … ; (3) delays that might be reasonable in the sphere of economic regulation are less tolerable when human health and welfare are at stake; … (4) the court should consider the effect of expediting delayed action on agency activities of a higher or competing priority … ; (5) the court should also take into account the nature and extent of the interests prejudiced by delay, … ; and (6) the court need not "find any impropriety lurking behind agency lassitude in order to hold that agency action is 'unreasonably delayed.' " …

*TRAC*, 750 F.2d at 80. (internal citations omitted). As stated in numerous decisions citing to and considering the *TRAC* factors, the reasonableness of agency delay is not solely measured or determined by the length of delay because "[n]o one factor is determinative, and each case must be analyzed according to its own circumstances." *In re Public Employees for Environmental Responsibility*, 957 F.3d 267, 273 (D.C. Cir. 2020). Based on the particular circumstances of this case, an appropriate weighing of the *TRAC* factors supports the issuance of a writ of mandamus as requested by the Petitioners.

*Factors one and two—rule of reason, nature and circumstances of the delay*. Although there is no specified timeline included in Section 757 for the FAA to respond to the Petitioners requests and "act" in accordance with its obligations provided by Section 757 as requested by the Petitioners, the APA requires the FAA

to conclude a matter "within a reasonable time." 5 U.S.C. § 555(b). Section 555(b) further provides that this duty of the agency to act must be carried out "[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time." *Id*. As the D.C. Circuit has explained, this provision in 5 U.S.C. § 555(b) "imposes a general but nondiscretionary duty upon an administrative agency to pass upon a matter presented to it." *Mashpee Wampanoag Tribal Council, Inc. v. Norton*, 336 F.3d 1094, 1099 (D.C. Circuit 2003).

As noted by the above-cited legal authorities, what is a "reasonable time" can be impacted by the particular circumstances of the case. *In re Public Employees for Environmental Responsibility*, 957 F.3d at 273. In light of the approaching July 1, 2026 effective date, the FAA's failure to respond to the Petitioners' request for the FAA to acknowledge prior to the effective date of the Takeover Act that the FAA will "act" in accordance with aforementioned clear and non-discretionary statutory obligations imposed by Section 757 and continue to recognize the currently existing Board of the Chattanooga Airport Authority as the Chattanooga airport's sponsor pending resolution of the disputed change of sponsorship of the airport strongly weighs in favor of a determination of unreasonable delay by the FAA.

*Factors three and five—interests prejudiced.* These two factors are often considered together because both factors are essentially concerned with and weigh the nature of the interests at issue and the extent such interests are prejudiced by

agency delay. *See TRAC*, 750 F.2 at 80; *see also Khan v. Baker*, No. 24-CR-271-RCI, 2025 WL 958312, at *5 (D.D.C. Mar. 31, 2025). Petitioners are not required to show that the Petitioners are irreparably prejudiced by agency inaction to obtain mandamus relief. The Petitioners can easily establish irreparable harmif the mandamus relief requested by this petition is not considered and granted prior to July 1, 2026 because the failure of the FAA to act on the Petitioner's request will result in the dismissal of the entire nine person Board. Although Section 757 does not expressly state that the statutory obligations stated in Section 757 are included to protect "human health and welfare"—as opposed to "sphere of economic regulation,"—Section 757 is included and codified in 49 U.S.C.§ 47101 – Policies, and 49 U.S.C.§ 47101(a) states, "It is the policy of the United States -- **(1)** that the safe operation of the airport and airway system is the highest aviation priority . . . ." Based upon the above stated circumstances, factors three and five of the *TRAC* criteria also support a finding that FAA's failure to respond and act upon the Petitioners 'requests should constitute 'unreasonable delay."

*Factor four—effect on other agency priorities.* The fourth *TRAC* factor "generally cautions against facilitating line-jumping and reordering agency priorities." *Ctr. for Biological Diversity*, 53 F.4th at 672. Given the limited nature of the Petitioners requested action from the FAA—which does not involve any

discretionary decision making by the FAA—no "line-jumping" or "reordering agency priorities" are implicated in the instant case.

*Factor six—agency impropriety.* Petitioners currently do not have any firsthand knowledge of why the FAA has inexplicably still not responded to Petitioners' request, even after promising in its Tuesday, June 2, 2026 email to Petitioners, that such response should be forthcoming "by the end of the [that]week," or whether the FAA's failure to respond and fulfill that promise was related to "agency impropriety" or inappropriate third party interference. Regardless, the Court "need not find any impropriety" in the FAA's delay in acting upon the Petitioners' requests to grant mandamus relief. TRAC, 750 F.2d at 80.

## RELIEF SOUGHT

The Court should issue a writ of mandamus to the FAA and its Administrator directing the agency promptly to have the Administrator forward a written communication to the appropriate representative of the State of Tennessee, the Chattanooga Airport Authority and the City of Chattanooga stating and expressly acknowledging that, consistent and in compliance with Section 757, the FAA does recognizes and will continue to recognize the currently existing Board of the Chattanooga Airport Authority and the currently existing governance of such authority pending resolution of the disputed change of sponsorship regardless of Tennessee 2026 Public Acts chapter 978. The Court should also retain jurisdiction

to monitor respondents' compliance with the Court's order, and award petitioners their reasonable costs and attorneys' fees.

Respectfully submitted,

D. KIRK SHAFFER, PLLC.

By:____*s/ D. Kirk Shaffer*______________

D. Kirk Shaffer (#45500)
*Attorney for Petitioners*
2405 Avenue G
Bay City, TX 77414
615-587-4242 Telephone
kirk@dkirkshaffer.com

# ADDENDA

## Statutory Provisions Involved

**Section 757 of the FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757)Codified at 49 U.S.C. § 47101 – Policies, "Statutory Notes" - Disputed Changes Of Sponsorship At Federally Obligated, Publicly Owned Airport.**

**49 U.S.C. § 4701. Policies**, effective May 16, 2024, in relevant part:

(a) **General.** -- It is the policy of the United States--

(1) that the safe operation of the airport and airway system is the highest aviation priority;

* * *

## STATUTORY NOTES

* * *

**Disputed Changes of Sponsorship at Federally Obligated, Publicly Owned Airport**

Pub.L. 118-63, Title VII, § 757, May 16, 2024, 138 Stat. 1285, provided that:

**(a) Approval authority.**—

**(1) In general.**—Subject to paragraph (2), in the case of a disputed change of airport sponsorship, the Administrator shall have the sole legal authority to approve any change in the sponsorship of, or operational responsibility for, the airport from the airport sponsor of record to another public or private entity.

**(2) Exclusion.**—This section shall not apply to a change of sponsorship or ownership of a privately-owned airport, a transfer under the Airport Investment Partnership Program, a change when

the Federal Government exercises a right of reverter, or a change that is not disputed.

**(b) Conditions for approval.**—

**(1) In general.**—Subject to paragraphs (2) and (3), the Administrator shall not approve any disputed change of airport sponsorship unless the Administrator receives—

(A) written documentation from the airport sponsor of record consenting to the change in sponsorship or operation;

(B) notice of a final, non-reviewable judicial decision requiring such change; or

(C) notice of a legally-binding agreement between the parties involved.

**(2) Pending judicial review.**—The Administrator may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction.

**(3) Technical assistance.**—

**(A) In general.**—Any State or local legislative body or public agency considering whether to take an action (including by drafting legislation) that would impact the ownership, sponsorship, governance, or operations of a federally obligated, publicly owned airport may request from the Administrator, at any point in the deliberative process—

(i) technical assistance regarding the interrelationship between Federal and State or local requirements applicable to any such action; and

(ii) review and comment on such action.

**(B) Failure to seek technical assistance.**—The Administrator may deny a change in the ownership, sponsorship, or governance of, or operational responsibility for, a federally

obligated, publicly owned airport if a State or local legislative body or public agency does not seek technical assistance under subparagraph (A) with respect to such change.

**(c) Final decision authority**.—In addition to the conditions outlined in subsection (b), the Administrator shall independently determine whether the proposed sponsor or operator is able to satisfy Federal requirements for airport sponsorship or operation and shall ensure, by requiring whatever terms and conditions the Administrator determines necessary, that any change in the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport is consistent with existing Federal law, regulations, existing grant assurances, and Federal land conveyance obligations.

**(d) Definition of disputed change of airport sponsorship**.—In this section, the term "disputed change of airport sponsorship" means any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport, including any such change directed by judicial action or State or local legislative action, where the airport sponsor of record initially does not consent to such change.

**5 U.S.C.A. § 706**
**§ 706. Scope of review**

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall--

**(1)** compel agency action unlawfully withheld or unreasonably delayed; …

* * *

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

**49 U.S.C.A. § 46110**
**§ 46110. Judicial review**
**Effective: May 16, 2024**

**(a) Filing and venue.**--Except for an order related to a foreign air carrier subject to disapproval by the President under section 41307 or 41509(f) of this title, a person disclosing a substantial interest in an order issued by the Secretary of Transportation (or the Administrator of the Transportation Security Administration with respect to security duties and powers designated to be carried out by the Administrator of the Transportation Security Administration or the Administrator of the Federal Aviation Administration with respect to aviation duties and powers designated to be carried out by the Administrator of the Federal Aviation Administration) in whole or in part under this part, part B, or subsection (l) or (r) of section 114 may apply for review of the order by filing a petition for review in the United States Court of Appeals for the District of Columbia Circuit or in the court of appeals of the United States for the circuit in which the person resides or has its principal place of business. The petition must be filed not later than 60 days after the order is issued. The court may allow the petition to be filed after the 60th day only if there are reasonable grounds for not filing by the 60th day.

* * *

**5 U.S.C.A. § 555**
**§ 555. Ancillary matters**

(a) This section applies, according to the provisions thereof, except as otherwise provided by this subchapter.

(b) … With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it. …

* * *

**Declaration of James E. Hall**

I, James E. Hall, declare:

1. I am the Chairman of the Board of Commissioners ("Board") for the Chattanooga Metropolitan Airport Authority and have serve on such Board since 2003.

2. The Chattanooga airport is a publicly owned, federally obligated airport. The existing "sponsor of record" of the Chattanooga airport is the Chattanooga Metropolitan Airport Authority (the "Chattanooga Airport Authority"). The Chattanooga Airport Authority is a statutorily recognized agency and "instrumentality" of the City of Chattanooga which is "governed" by a Board of Commissioners (the "Board") comprised of nine members who have been exclusively appointed by the City of Chattanooga, and thus under the control of the City of Chattanooga, since the creation of such municipal agency/instrumentality by the City of Chattanooga in 1985.

3. The transition of the operation of the Chattanooga airport from the City of Chattanooga to the Chattanooga Airport Authority in 1985 marked a major turning point for the airport. The transition permitted and empowered the airport leadership to better focus on strategic planning, growth, infrastructure upgrades, and airline recruitment, all of which resulted in steadily increased passenger traffic. the City of Chattanooga, the Chattanooga Airport Authority, the Chattanooga airport, and its

users have reaped the benefits of the steady, locally familiar appointment process and governance through the structure that has been in place since 1985.

4. Despite such success, in April 2026, the Tennessee legislature passed an amendment to the Tennessee Metropolitan Airport Authority Act, which the Governor of Tennessee signed on May 19, 2026, as 2026 Public Acts chapter 978 which—when effective on July 1, 2026—vacates the entirety of the existing Board of the Chattanooga Airport Authority and provides the State with the right to appoint six of the nine members to the newly composed Board—and thus, the control of—the governance of Chattanooga Airport Authority for no legitimate reason and without any rational basis (the "Takeover Act"). The Takeover Act inarguably constitutes either a change of "sponsorship" and/or a change of the "governance of, or operational responsibility" for the Chattanooga airport currently operated by the Chattanooga Airport Authority, which is currently under the control of the City of Chattanooga. (See copy of 2026 Public Acts, chap. 978 (Senate Bill No. 2473, House Bill No. 2507, attached as Exhibit A hereto).

5. In passing and enacting the Takeover Act the State has ignored and has still not complied with certain requirements of Section 757 of the FAA Reauthorization Act of 2024, *e.g.* obtaining the consent of the current "sponsor" of the Chattanooga airport—the Chattanooga Airport Authority—and obtaining approval of the FAA in accordance with the clear requirements of Section 757.

6. The State actors—Governor Lee, Senate Speaker McNally, and House Speaker Sexton—have been notified in writing of the Chattanooga Airport Authority's and the City of Chattanooga's objection and opposition to the Takeover Act, and that the Chattanooga Airport Authority and the City of Chattanooga dispute the changes to the law of Tennessee impacting and changing the "sponsorship" of the Chattanooga airport. [See copies of certain written communications amongst the Chattanooga Airport Authority, the City of Chattanooga, and the State (Governor Lee, Senate Speaker McNally, and House Speaker Sexton), attached hereto as Exhibit B hereto].

6. The FAA has been notified verbally and in writing on multiple occasions of the Chattanooga Airport Authority's and the City of Chattanooga's objection and opposition to the Takeover Act, and that the Chattanooga Airport Authority and the City of Chattanooga thus dispute such changes to the "sponsorship" and/or the "governance of, or operational responsibility" of the Chattanooga airport. (See copies of certain written communications amongst the Chattanooga Airport Authority, the City of Chattanooga, and the FAA, attached hereto as Exhibit C). Through such communications, the FAA and its Administrator have been requested to act in accordance with its clear duties stated in Section 757 and issue a letter to the State, the Chattanooga Airport Authority, and the City of Chattanooga stating and expressly acknowledging that, consistent and in compliance

with Section 757, the FAA recognizes and will continue to recognize the currently existing Board of the Chattanooga Airport Authority and the currently existing governance of such authority pending resolution of the disputed change of sponsorship regardless of whether such resolution occurs before July 1, 2026.

7. To date, neither the FAA nor its Administrator have acted upon this request which is consistent with and in accordance with the FAA's and its Administrator's duties and obligations stated in Section 757. Because the change of sponsorship and governance resulting from the Takeover Act is currently scheduled to go into effect on July 1, 2026 even though the dispute regarding such change in sponsorship and governance has yet to be resolved and no approval of such changes by the FAA could be thus obtained, the Petitioners have no other remedy other than an order from this Court compelling the FAA and its Administrator to act as required by Section 757 and requested by the Petitioners.

I declare under the penalty of perjury that the foregoing is true and correct. Executed on June 18, 2026 in Chattanooga, Tennessee.

James E. Hall, as Chairman of the Board of Commissioners
for the Chattanooga Metropolitan Airport Authority

# *State of Tennessee*

## PUBLIC CHAPTER NO. 978

**SENATE BILL NO. 2473**

**By Bailey, Rose, Gardenhire**

Substituted for: House Bill No. 2507

By Mr. Speaker Sexton, Garrett, Bricken

AN ACT to amend Tennessee Code Annotated, Title 4; Title 7 and Title 42, relative to airport authorities.

WHEREAS, the State's regional and metropolitan airports and the governance thereof are important matters of statewide concern; and

WHEREAS, the governance and composition of metropolitan airport authorities and regional airport authorities has a direct relationship with the direction, success, safety, and security of regional and metropolitan airports; now, therefore,

BE IT ENACTED BY THE GENERAL ASSEMBLY OF THE STATE OF TENNESSEE:

SECTION 1. Tennessee Code Annotated, Section 42-4-105, is amended by deleting the section and substituting instead:

(a) The board of commissioners of each existing authority is vacated and reconstituted pursuant to this section.

(b) The governing body of an authority in this state is a board of commissioners of nine (9) persons appointed as follows:

(1) Two (2) persons to be appointed by the speaker of the house of representatives, one (1) of whom is a resident of the county in which the airport is located and one (1) of whom is a resident of a county in the region surrounding the airport;

(2) Two (2) persons to be appointed by the speaker of the senate, one (1) of whom is a resident of the county in which the airport is located and one (1) of whom is a resident of a county in the region surrounding the airport;

(3) Two (2) persons to be appointed by the governor, both of whom are residents of a county in the region surrounding the airport; and

(4) Except as provided in subsection (c), three (3) persons appointed by the executive officer of the creating municipality and approved by its governing body, all of whom are residents of the creating municipality.

(c)(1) If there is one (1) participating municipality, then one (1) person appointed pursuant to subdivision (b)(4) must be from a list of qualified nominees submitted by the executive officer of that participating municipality.

(2) If there are two (2) or more participating municipalities, then up to two (2) persons appointed pursuant to subdivision (b)(4) must be from lists of qualified nominees submitted by each of the executive officers of the participating municipalities.

(d) Persons appointed to the board:

Exhibit A

(1) Must have no financial interest in an airport or its concessions at the time of the commissioner's appointment and during the commissioner's tenure on the board; and

(2) Must not be an officer or employee of the creating municipality or participating municipality.

(e) In order to stagger the terms of the newly appointed board, initial appointments are made as follows:

(1) Commissioners appointed under subdivision (b)(3) serve initial two-year terms;

(2) Commissioners appointed under subdivision (b)(1) serve initial three-year terms;

(3) Commissioners appointed under subdivision (b)(2) serve initial four-year terms; and

(4) Commissioners appointed under subdivision (b)(4) serve initial five-year terms.

(f) Following the expiration of a commissioner's initial term, as prescribed in subsection (e), all terms are four (4) years, to begin on July 1 and terminate on June 30, four (4) years thereafter. The beginning of an initial term is deemed to be July 1 of the calendar year in which the appointment occurs, regardless of whether the actual appointment date occurs before or after July 1 of that year.

(g) In making the appointments to the board, the appointing authorities shall strive to ensure that the membership is representative of the geographic and demographic composition of this state or the creating municipality and at least one (1) commissioner is a female.

(h) In addition to subsection (g), in making the appointments to the board, the appointing authorities shall ensure that each commissioner is generally a person of excellent character and reputation and a person in good standing and reputation in one (1) of the following fields:

(1) Engineering or architecture, with a license to practice in the state and an active practice in such profession for the preceding five (5) years;

(2) Law, with a license to practice before the highest court in this state for a period of not less than five (5) years;

(3) Industry, business, or commerce;

(4) Public safety;

(5) Aviation; or

(6) Finance.

(i) A commissioner:

(1) Serves in such capacity until the expiration of the term to which the commissioner was appointed and until the commissioner's successor is duly appointed and qualified; and

(2) May be removed by the commissioner's appointing authority with or without cause. A vacancy created by the removal of a commissioner is filled by the appointing authority in the same manner as the original appointment.

(j) In addition to the reporting requirements under § 42-4-106(d) and (e), the authority shall submit quarterly reports or briefings of the activities, plans, and conditions of the authority, and any proposals for capital expansion or improvements to members of the governing body of the creating municipality, the governor, the speaker of the house of representatives, and the speaker of the senate prior to the expansion or improvements.

(k) The authority shall maintain its books and prepare its financial statements in a timely manner satisfactory to the state and pay the state for all costs the state incurs in reviewing and auditing the authority's finances.

(l) The board shall elect from among its members a chair, vice chair, and secretary, each of whom shall continue to be voting members, and shall adopt its own bylaws and rules of procedure. A majority of the commissioners constitutes a quorum for the transaction of business. Except as expressly otherwise specified in this chapter, all powers granted to an authority by this chapter must be exercised by the board.

(m) Commissioners do not receive a salary but must be reimbursed for necessary expenses incurred in the performance of their official duties.

SECTION 2. Tennessee Code Annotated, Section 42-3-104, is amended by deleting the last two sentences of subdivision (a)(3) and adding the following as a new subsection:

(f) Notwithstanding this section to the contrary:

(1) The governing body of an existing regional airport authority created pursuant to subdivision (a)(3) is vacated and reconstituted pursuant to this subsection (f).

(2) The governing body of a regional airport authority created pursuant to subdivision (a)(3) is a board of commissioners of twelve (12) persons appointed as follows:

(A) Two (2) persons to be appointed by the speaker of the house of representatives, one (1) of whom is a resident of a participating political subdivision of another state, and one (1) of whom is a resident of the participating county in which the airport is located;

(B) Two (2) persons to be appointed by the speaker of the senate, one (1) of whom is a resident of a participating municipality located in the county in which the airport is located and that does not border the participating political subdivision of another state, and one (1) of whom is a resident of the participating municipality located in the county in which the airport is not located;

(C) Three (3) persons to be appointed by the governor, two (2) of whom are residents of a participating county in which the airport is not located, and one (1) of whom is a resident of a participating municipality located in a county in which the airport is not located;

(D) One (1) person appointed by the executive officer of the participating county in which the airport is located and approved by its governing body;

(E) One (1) person appointed by the executive officer of the participating municipality located in the county in which the airport is located and that does not border a participating political subdivision of another state and approved by its governing body;

(F) One (1) person appointed by the executive officer of a participating municipality located in the county in which the airport is located and that borders a participating political subdivision of another state and approved by its governing body;

(G) One (1) person appointed by the executive officer of a participating county in which the airport is not located and approved by its governing body; and

(H) One (1) person appointed by the executive officer of a participating municipality located in the county in which the airport is not located and approved by its governing body.

(3) Persons appointed to the board must have no financial interest in an airport or its concessions at the time of the commissioner's appointment and during the commissioner's tenure on the board.



Exhibit A

(4) In order to stagger the terms of the newly appointed board, initial appointments are made as follows:

(A) Commissioners appointed under subdivision (f)(2)(C) serve initial two-year terms;

(B) Commissioners appointed under subdivision (f)(2)(A) serve initial three-year terms;

(C) Commissioners appointed under subdivision (f)(2)(B) serve initial four-year terms; and

(D) Commissioners appointed under subdivisions (f)(2)(D)-(H) serve initial five-year terms;

(5) Following the expiration of a commissioner's initial term, as prescribed in subdivision (f)(4), all terms are four (4) years, to begin on July 1 and terminate on June 30, four (4) years thereafter. The beginning of an initial term is deemed to be July 1 of the calendar year in which the appointment occurs, regardless of whether the actual appointment date occurs before or after July 1 of that year;

(6) In making the appointments to the board, the appointing authorities shall strive to ensure that the membership is representative of the geographic and demographic composition of this state, the participating municipalities and counties of this state, or the political subdivisions of another state, and that at least one (1) commissioner is a female;

(7) In addition to subdivision (f)(6), in making the appointments to the board, the appointing authorities shall ensure that each commissioner is generally a person of excellent character and reputation. It is the legislative intent that each commissioner be a person in good standing and reputation in one (1) of the following fields:

(A) Engineering or architecture, with a license to practice in the state and an active practice in such profession for the preceding five (5) years;

(B) Law, with a license to practice before the highest court in this state for a period of not less than five (5) years;

(C) Industry, business, or commerce;

(D) Public safety;

(E) Aviation; or

(F) Finance;

(8) A commissioner:

(A) Serves in such capacity until the expiration of the term to which the commissioner was appointed and until the commissioner's successor is duly appointed and qualified; and

(B) May be removed by the commissioner's appointing authority with or without cause. A vacancy created by the removal of a commissioner is filled by the appointing authority in the same manner as the original appointment;

(9) The authority shall submit quarterly reports or briefings of the activities, plans, and conditions of the authority, and any proposals for capital expansion or improvements to members of the legislative body of each participating municipality and county of this state and political subdivision of another state; the governor; the speaker of the house of representatives; and the speaker of the senate prior to the expansion or improvements;

(10) The authority shall maintain its books and prepare its financial statements in a timely manner satisfactory to the state and pay the state for all costs the state incurs in reviewing and auditing the authority's finances; and

(11) The authority is subject to all other provisions of this chapter to the extent otherwise applicable, except as provided by this subsection (f).

SECTION 3. Tennessee Code Annotated, Section 42-3-104(a), is amended by deleting the language "subdivision (a)(1), (a)(2) or (a)(3)" in subdivision (4)(C) and substituting instead the language "subdivision (a)(1) or (a)(2)" and deleting the language "political subdivision of another state" in subdivisions (4)(C) and (D) wherever it appears.

SECTION 4. Tennessee Code Annotated, Section 42-3-108(b), is amended by deleting the language "membership is appointed by the legislative bodies of five (5) or more local governments" and substituting instead the language "membership includes five (5) or more local governments".

SECTION 5.

(a) This act does not impair, diminish, or otherwise adversely affect any retirement, pension, insurance, leave, or other fringe benefit rights or benefits of any employee of an airport authority that are vested or accrued as of the effective date of this act.

(b) Vested or accrued rights and benefits of an employee of an airport authority affected by this act remain enforceable in accordance with the terms of the applicable plan, policy, contract, or agreement.

SECTION 6. If any provision of this act or its application to any person or circumstance is held invalid, then the invalidity does not affect other provisions or applications of the act that can be given effect without the invalid provision or application, and to that end, the provisions of this act are severable.

SECTION 7. For purposes of appointing commissioners to the new airport authority boards, this act takes effect upon becoming a law, the public welfare requiring it. For all other purposes, including the vacation and reconstitution of any board, this act takes effect July 1, 2026, the public welfare requiring it.

**SENATE BILL NO. 2473**

**PASSED:** **April 23, 2026**

Randy McNally

**RANDY McNALLY**
***SPEAKER OF THE SENATE***

**CAMERON SEXTON,** ***SPEAKER***
***HOUSE OF REPRESENTATIVES***

**APPROVED this** 19th **day of** May **2026**

Bill Lee

**BILL LEE,** ***GOVERNOR***

May 1, 2026

The Honorable Bill Lee
Governor of Tennessee
State Capitol, 1st Floor
600 Dr. Martin L. King, Jr. Blvd.
Nashville, TN 37243
Bill.Lee@tn.gov

***VIA EMAIL & U.S. MAIL***

The Honorable Randy McNally
Lieutenant Governor
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
lt.gov.randy.mcnally@capitol.tn.gov

The Honorable Cameron Sexton
Speaker of the House
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
speaker.cameron.sexton@capitol.tn.gov

Re: Senate Bill No. 2473, House Bill No. 2507

Governor Lee, Lieutenant Governor McNally, and Speaker Sexton:

Pursuant to the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"),[1] any change in the governance or operational responsibility of the Chattanooga Metropolitan Airport (the "Airport") that does not have the consent of the current Chattanooga Metropolitan Airport Authority ("the Authority") must be approved by the Federal Aviation Administration ("FAA"). Senate Bill No. 2473/House Bill No. 2507, which awaits Governor Lee's signature at the time of this letter, changes the Airport's governance and operational responsibility. The Authority does not consent to this change.

The Act states that the FAA "shall not" approve of the change of airport sponsorship unless it receives one of the following:

(A) written documentation from the [Authority] consenting to the change in sponsorship or operation;
(B) notice of a final, non-reviewable judicial decision requiring such change; or
(C) notice of a legally-binding agreement between the parties involved.[2]

---

[1] FAA REAUTHORIZATION ACT OF 2024, PL 118-63, May 16, 2024, 138 Stat 1025.
[2] *Id.* at § 757(b)(1).

Exhibit B

The undersigned hereby submit this letter as a formal request to meet in an attempt to resolve outstanding issues so that the Authority can either document its consent to the change or reach an agreement pursuant to the Act. Please let the undersigned know when you will be available to meet to address this urgent issue.

Sincerely,

City of Chattanooga

Tim Kelly, Mayor

Chattanooga Metropolitan Airport Authority

James Hall, Chairman

cc: William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

Exhibit B

GRANT KONVALINKA & HARRISON, P.C.

Ninth Floor, Republic Centre
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900

Telephone (423) 756-8400
Facsimile (423) 756-6518
www.gkhpc.com

Writer's email:
jkonvalinka@gkhpc.com

May 20, 2026

**VIA EMAIL AND FEDERAL EXPRESS**
William Liam McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue SW
Washington, D.C. 20591
liam.mckenna@faa.gov

Mr. McKenna:

The undersigned represents the City of Chattanooga (City) and the Chattanooga Metropolitan Airport Authority (CMAA). We have previously notified[1] you that there is a dispute because CMAA is the sponsor of record initially and does not consent to any change regarding the governance and operational responsibility issues contemplated by the State of Tennessee Senate Bill 2473/House Bill 2507.

This morning, Mayor Tim Kelly and Chairman Jim Hall received a letter from the Tennessee Attorney General, a copy of which is attached, that apparently overlooks the following excerpt of the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"):

> Definition of Disputed Change of Airport Sponsorship.-- In this section, the term "disputed change of airport sponsorship" means any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport, including any such change directed by judicial action or State or local legislative action where the airport sponsor of record initially does not consent to such change.

This letter is a request that the FAA issue a letter stating that, in compliance with § 757 of the Act, the FAA will continue to recognize the current CMAA board pending resolution of the disputed change of sponsorship.

[1] Attached for your convenience are certain written communications between representatives of the FAA and the undersigned.

Exhibit B

Sincerely,

John P. Konvalinka

cc: Bryan Bedford, Administrator
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

Jonathan Skrmetti, Attorney General
P.O. Box 20207
Nashville, TN 37202

**John Konvalinka**

**From:** John Konvalinka
**Sent:** Friday, April 10, 2026 8:57 AM
**To:** Phillip C Rogers
**Subject:** RE: Chattanooga Metropolitan Airport Authority
**Attachments:** CMAA Resolution Creating Chattanooga Metropolitan Airport Authority - June 28, 1985(3781490.2).pdf

Section 3 which is on 2nd and 3rd pages of the attached resolution provides the Mayor shall appoint the governing body of the authority but it is subject to the approval by the Board of Commissioners of the City of Chattanooga.

**From:** John Konvalinka
**Sent:** Thursday, April 9, 2026 8:12 PM
**To:** Phillip C Rogers <Phillip.C.Rogers@faa.gov>
**Subject:** Re: Chattanooga Metropolitan Airport Authority

I believe that it is the mayor of the city of Chattanooga Tim Kelly but will confirm tomorrow

On Apr 9, 2026, at 6:00 PM, Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov> wrote:

John,

Thanks. I was meaning who selects the members.

Thanks,

Phillip C. Rogers
<image001.png> Program Manager, Southern Region, Memphis ADO
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
phillip.c.rogers@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Thursday, April 9, 2026 4:48 PM
**To:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Subject:** RE: Chattanooga Metropolitan Airport Authority

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.



Exhibit B

Attached is the information you requested. Let me know if you need anything else.

**From:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Sent:** Thursday, April 9, 2026 3:24 PM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** RE: Chattanooga Metropolitan Airport Authority
**Importance:** High

John,

Can you tell me the current makeup of the board that governs CHA?

Thanks,

<image001.png>

Phillip C. Rogers
Program Manager, Southern Region, Memphis ADO
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
phillip.c.rogers@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Monday, April 6, 2026 2:52 PM
**To:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Subject:** RE: Chattanooga Metropolitan Airport Authority

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Thks.

**From:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Sent:** Monday, April 6, 2026 11:39 AM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** RE: Chattanooga Metropolitan Airport Authority

John,

Received.

FYI – the email that you sent the original letter to is incorrect.



Exhibit B

Thanks,

<image001.png> Phillip C. Rogers
Program Manager, Southern Region, Memphis ADO
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
phillip.c.rogers@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Monday, April 6, 2026 10:37 AM
**To:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Subject:** FW: Chattanooga Metropolitan Airport Authority

You don't often get email from jkonvalinka@gkhpc.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Attached is the letter.

**From:** John Konvalinka
**Sent:** Saturday, March 28, 2026 2:16 PM
**To:** 'Rans.bkack@faa.gov' <Rans.bkack@faa.gov>
**Subject:** Chattanooga Metropolitan Airport Authority

Pleas acknowledge receipt.

Thank you.

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*
*jkonvalinka@gkhpc.com*

NOTICE: [illegible]

NOTICE: [illegible]



Exhibit B

FILED
SECRETARY OF STATE
1985 JUN 28 AM 9 52

I, H. D. Miller, Auditor of the City of Chattanooga, Tennessee, and as , eper of the records of the Board of Commissioners of said , do hereby certify that the foregoing is a true, compared and correct copy of **Resolution** No. 16345, adopted by the Board of Commissioners of the City of Chattanooga, Tennessee on Ma 29, 1985.

WITNESS my hand and the Seal of the City of Chattanooga, Tennessee, this 25thday of June, 1985.

City Auditor and Clerk of
the Board of Commissioners,
Chattanooga, Tennessee.

Exhibit B

FILED
SECRETARY OF STATE
1985 JUN 28 AM 9:52

RESOLUTION NO. 16345

A RESOLUTION TO CREATE THE CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY.

---

WHEREAS, the City of Chattanooga is authorized by Tennessee Code Annotated §42-4-101 through §42-4-116 to create an airport authority; and

WHEREAS, a public hearing on the question of creating an airport authority was held pursuant to Tennessee Code Annotated §42-4-105 on May 29, 1985; and

WHEREAS, the Board of Commissioners of the City of Chattanooga have determined that the public convenience and necessity requires the creation of such an authority;

NOW, THEREFORE,

BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE CITY OF CHATTANOOGA, TENNESSEE:

SECTION 1. It is hereby determined and declared that the public convenience and necessity require the creation of an airport authority for the City of Chattanooga, Tennessee, pursuant to Tennessee Code Annotated §42-4-101, et seq., and that such an airport authority for the City of Chattanooga, Tennessee, be and is hereby created.

SECTION 2. The airport authority for the City of Chattanooga shall be designated the "Chattanooga Metropolitan Airport Authority" and shall have its principal offices at Lovell Field, Chattanooga, Tennessee.

SECTION 3. The Mayor shall appoint the governing body of the authority pursuant to the provisions of Tennessee Code Annotated §42-4-105. These appointments shall be subject to

[illegible] JUN 28 AM 9 52

[illegible] by the Board of Commissioners of the City of Chattanooga Tennessee.

SECTION 4. The City Auditor shall file a certified copy of this resolution with the Secretary of State of the State of Tennessee the Tennessee Aeronautics Commission, and the Federal Aviation Administration, each said certified resolution to be accompanied by a certified copy of the resolution to be hereafter adopted approving the appointment of the Board of Commissioners of said airport authority. Upon the adoption and filing of this resolution and the resolution approving the appointment of its Board of Commissioners, the Chattanooga Metropolitan Airport Authority shall constitute a body politic and corporate entity and shall immediately assume the powers and responsibilities set forth in Tennessee Code Annotated §42-4-101, et seq.

SECTION 5. The Mayor of the City of Chattanooga is hereby directed to negotiate subject to approval by the Board of Commissioners of the City of Chattanooga, a contract between the City of Chattanooga and the Chattanooga Metropolitan Airport Authority for the orderly transfer to the authority of the airport properties, functions and outstanding obligations of the City of Chattanooga in accordance with the provisions of Tennessee Code Annotated §47-4-101, et seq. Such agreement may include provisions for the reimbursement of the City of Chattanooga for its obligations issued for airport purposes, and such agreement may also include provisions for the payment of tax equivalents by the authority and its lessees on all or any part of the properties owned by the authority and any improvements owned by the authority or its lessees to the City of Chattanooga, and may provide for the creation of a civil service system and the retention of or continuation of civil service status, accrued pension, annual leave, sick leave, hospitalization, disability, and death benefits for employees of the authority.

FILED
SECRETARY OF STATE
1985 JUN 28 AM 9 52

SECTION 6. All ordinances, resolutions, and orders heretofore adopted in conflict herewith are, to the extent of such conflict, hereby repealed.

Duly passed and approved by the Mayor pursuant to Tennessee Code Annotated §42-4-104, this 29th day of May, 1985.

(SEAL)

GENE ROBERTS, MAYOR

ATTEST:

H. D. MILLER, CITY AUDITOR

MMc:lkt

**John Konvalinka**

**From:** John Konvalinka
**Sent:** Tuesday, April 21, 2026 8:34 AM
**To:** Rogers, Phillip C (FAA); Stovall, Jamal (FAA); Rivera-Davis, Melissa Y (FAA); Clark, Keturah A (FAA); John Briggs
**Subject:** RE: Chattanooga Metropolitan Airport Authority - Compliance (Airport Board Composition)
**Attachments:** Resolution No. 32863 City of Chattanooa's Financial and Economic Interest in and Proprietary Appointment Authority.pdf

Attached is a resolution that was passed on April 14, 2026.

-----Original Appointment-----
**From:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Sent:** Monday, April 20, 2026 12:09 PM
**To:** Black, Rans (FAA); Stovall, Jamal (FAA); Rivera-Davis, Melissa Y (FAA); Clark, Keturah A (FAA); John Briggs; John Saalwaechter; Brian Fedders; John Konvalinka
**Subject:** Chattanooga Metropolitan Airport Authority - Compliance (Airport Board Composition)
**When:** Tuesday, April 21, 2026 3:00 PM-4:00 PM (UTC-06:00) Central Time (US & Canada).
**Where:** Microsoft Teams Meeting
**Importance:** High

All,

The purpose of this meeting is to discuss the proposed State of TN law that changes Airport Board Composition.

Feel free to forward this meeting invitation to other interested parties.

Thanks,

Phillip Rogers

---

## Microsoft Teams meeting

**Join:** https://teams.microsoft.com/meet/276254477444277?p=OkJETAH87bNP8i016O

Meeting ID: 276 254 477 444 277

Passcode: NL9ec92o

Need help? | System reference



Exhibit B

**Dial in by phone**

+1 346-235-0792,,474619856# United States, Bammel

Find a local number

Phone conference ID: 474 619 856#

For organizers: Meeting options | Reset dial-in PIN

---



Exhibit B

RESOLUTION NO. 32863

A RESOLUTION RESTATING THE CITY OF CHATTANOOGA'S LONGSTANDING FINANCIAL AND ECONOMIC INTEREST IN AND PROPRIETARY APPOINTMENT AUTHORITY OVER ITS METROPOLITAN AIRPORT AUTHORITY.

---

**WHEREAS**, the City of Chattanooga ("City") has been authorized, in its corporate capacity, to establish, construct, equip, maintain, and operate an airport for the use of aeroplanes and other aircraft and may, through its City Council, lease or acquire real property for such use within or without the corporate limits of the City since it was granted that authority from the State of Tennessee by Private Act 1929, Ch. 2, §§ 2, 3, Ord. No. 11272, 5-2-02; and

**WHEREAS**, in 1985, the City created a Metropolitan Airport Authority pursuant to Tenn. Code Ann. § 42-1-101 *et seq*. to provide daily commercial air service to and from the City; and

**WHEREAS**, the City donated the land, equipment, and other personal property comprising the airport (then known as Lovell Field) to the Chattanooga Metropolitan Airport Authority, which the City had just created, for the purpose of the Metropolitan Airport Authority continuing commercial air service operations for the benefit of the City.

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF CHATTANOOGA, TENNESSEE, that it reasserts its longstanding and proprietary right of appointment authority and control over the Chattanooga Metropolitan Airport Authority and the property donated by the City and comprising the airport, the diminution of which would not be in the best interest of Chattanooga's citizens and tourists utilizing that facility, would infringe upon the City's right to establish and maintain municipal airport facilities and/or would constitute an unreasonable taking from the City of Chattanooga.

ADOPTED: April 14, 2026

PAN/mem/v5



Exhibit B

**John Konvalinka**

**From:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Sent:** Wednesday, April 29, 2026 9:27 AM
**To:** Pam Cowan; Black, Rans (FAA); Clark, Keturah A (FAA)
**Cc:** John Konvalinka; Yost, Kirby W.; Rogers, Phillip C (FAA)
**Subject:** RE: Follow up from FAA Call

Thank you, all!

I apologize for the duplicate requests for documentation. The request originated from Headquarters, and both the ADO and the Region (separate offices) are working to respond as quickly as possible to this time-sensitive matter.

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** Pam Cowan <pcowan@gkhpc.com>
**Sent:** Wednesday, April 29, 2026 9:03 AM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>; Black, Rans (FAA) <Rans.Black@faa.gov>; Clark, Keturah A (FAA) <Keturah.A.Clark@faa.gov>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** FW: Follow up from FAA Call

You don't often get email from pcowan@gkhpc.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

---

**From:** John Konvalinka
**Sent:** Wednesday, April 29, 2026 6:04 AM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>; Black, Rans (FAA) <Rans.Black@faa.gov>; Clark, Keturah A (FAA) <Keturah.A.Clark@faa.gov>
**Cc:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** RE: Follow up from FAA Call

I received a similar inquiry from Phillip Rogers, and I have sent him the attached deed as well.

Please note page 41 of the pdf or the reference at the top of the page in the left corner, which is Book 3284 page 581.



Exhibit B

Please let us know if the attachment is what you want.

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*
*jkonvalinka@gkhpc.com*

**From:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Sent:** Tuesday, April 28, 2026 9:02 PM
**To:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Black, Rans (FAA) <Rans.Black@faa.gov>; Clark, Keturah A (FAA) <Keturah.A.Clark@faa.gov>
**Subject:** RE: Follow up from FAA Call

Hello,

Yes, sir. The legal mechanism and document that transferred control of land and airport to the Authority (c. 1985). Additionally, is there any current proposal or action under consideration to transfer ownership or operational control of the airport back to the City? If so, please provide details and supporting documentation.

Thank you so much!

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Sent:** Tuesday, April 28, 2026 5:03 PM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Black, Rans (FAA) <Rans.Black@faa.gov>
**Subject:** RE: Follow up from FAA Call

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Ms. Rivera-Davis,

To my knowledge, there was no lease agreement. If you help me better understand the request, I can provide additional information and documentation to address it. Prior to 1985, the airport was operated directly by the City (so there was



Exhibit B

no lease agreement, as the City was the entity operating). Are you looking for a copy of the deed by which the City transferred the land?

Thanks,
**Kirby W. Yost**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0254
F (423) 508-1254
kyost@chambliss law.com | www.chamblisslaw.com

**From:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Sent:** Tuesday, April 28, 2026 4:32 PM
**To:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Black, Rans (FAA) <Rans.Black@faa.gov>
**Subject:** RE: Follow up from FAA Call

Hello, Kriby:

HQs requested a copy of the original lease agreement between the City and the Authority. Can you please provide this?

Thanks!

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Sent:** Friday, April 24, 2026 8:18 AM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>; John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** RE: Follow up from FAA Call

You don't often get email from kyost@chamblisslaw.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

No problem at all. Thank you for the confirmation. Would it be possible to have a brief call today? John and I are available between 11 and 1 if anytime in that window would work for you. We only need a few minutes. Please let us know if the time works and if so, what number?

Best,
**Kirby W. Yost**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0254
F (423) 508-1254
kyost@chamblisslaw.com | www.chamblisslaw.com

**From:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Sent:** Thursday, April 23, 2026 7:18 PM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Cc:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** RE: Follow up from FAA Call

[EXTERNAL EMAIL]

Hello, and yes, I did. Kirby, I apologize for not sending confirmation. I have elevated this case to HQs and our legal department and am standing by on how to proceed.

Thanks,

Melissa

250

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Thursday, April 23, 2026 3:29 PM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Cc:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** FW: Follow up from FAA Call

You don't often get email from jkonvalinka@gkhpc.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

I am forwarding Kirby's email of April 21 since your confirmation appeared to forward my email sending the City's resolution. Please let us know you received Kirby's email.

Thanks; hope to hear something soon.

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*
*jkonvalinka@gkhpc.com*

**From:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Sent:** Tuesday, April 21, 2026 5:58 PM
**To:** melissa.y.rivera-davis@faa.gov
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** Follow up from FAA Call

Ms. Rivera-Davis,

Thank you for the discussion today. First, as we discussed on the call, the Chattanooga Metropolitan Airport Authority does not concur that the transfer is consistent with federal law and the satisfaction of the FAA (as the FAA Compliance Guideline Letter 2021-1 describes).

To follow up on the reasons for our concerns, as we expressed on the call, we attach a more detailed list of those concerns. I also attach a copy of the 2021 FAA Compliance letter referenced above.

Separately, our understanding from the FAA Reauthorization Act of 2024 (Pub. L 118-63, Title VII, Section 757) is that any State "considering whether to take an action (including by drafting legislation) that would impact the ownership, sponsorship, governance, or operations of a federally obligated, publicly owned airport may request from the Administrator..." technical assistance regarding the interrelationship between Federal and State or local requirements applicable to any such action; and review and comment on such action. More importantly, the Act states (in subsection 3(B)) that "The Administrator may deny a change in the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport if a State or local legislative body or public agency does not seek technical assistance under subparagraph A with respect to such change." It does not appear that the State has sought technical assistance from the FAA on this proposed change of governance or discussed this with the Airport Authority governing body.

We are available to discuss further or answer any questions that you may have.

Best,



Exhibit B

**Kirby W. Yost**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0254
F (423) 508-1254
kyost@chamblisslaw.com | www.chamblisslaw.com

This transmission is confidential and may be privileged or proprietary. If you are not the intended recipient, you are not authorized to use the information in this transmission in any way. Please inform the sender immediately if you have received this transmission in error and permanently delete and destroy the original and any copies of the information.

Personal messages and attachments express the views of the sender and are not to be attributed to Chambliss, Bahner & Stophel, P.C.

NOTICE: [illegible]

---

NOTICE: [illegible]



Exhibit B

**RESOLUTION OF THE BOARD OF COMMISSIONERS OF CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY**

WHEREAS, in 1985, the City of Chattanooga, TN (the "City") created a Metropolitan Airport Authority pursuant to Tenn. Code Ann. § 42-4-101 et. seq. and City Resolution No. 16345 for the public convenience and necessity;

WHEREAS, the City donated the land, equipment, and other personal property comprising the airport (then known as Lovell Field) to the Chattanooga Metropolitan Airport Authority ("CMAA") for the purpose of CMAA continuing commercial air service and general aviation operations;

WHEREAS, CMAA is a federally-obligated, publicly-owned, public use airport;

WHEREAS, under Tenn. Code Ann. § 42-4-105(a)(1)(D), members of the Board of CMAA are persons of good standing and reputation appointed by the City Mayor and approved by City Council, who shall have no financial interest in an airport or its concessions;

WHEREAS, legislation recently approved by the Tennessee legislature, SB 2473/HB 2507 (the "State Legislation") constitutes an action that seeks to change the ownership, federal sponsorship, governance of, or operational responsibility for a federally obligated, publicly-owned, public use airport, as described in the FAA Reauthorization Act of 2024 (Pub. L. 118-63, Title VII, Section 757);

WHEREAS, the Board previously voted by written consent action to engage attorney D. Kirk Shaffer PLLC (the "Consultant") in connection with the State Legislation

**NOW, THEREFORE, BE IT RESOLVED by the Board of Commissioners of CMAA that CMAA disputes the changes made by the State Legislation.**

**BE IT FURTHER RESOLVED that the Board hereby ratifies and affirms engagement of the Consultant, as previously expressed in Action by Consent.**

Adopted effective this 1st day of May, 2026:

**CHAIRMAN OF THE BOARD OF COMMISSIONERS:**

By: [signature]
Name: Jim Hall, Chairman

Attest:

[signature]
Secretary

Exhibit B

GKH
GRANT KONVALINKA & HARRISON, P.C.

Ninth Floor, Republic Centre
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900

Telephone (423) 756-8400
Facsimile (423) 756-6518
www.gkhpc.com

Writer's email:
jkonvalinka@gkhpc.com

May 14, 2026

***VIA EMAIL***

William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

Mr. McKenna:

The undersigned represents the City of Chattanooga (City) and the Chattanooga Metropolitan Airport Authority (CMAA). Previously, you received correspondence on May 1, 2026, a copy of which is attached.

There has been no response to the City's and CMAA's request to attempt to resolve the governance and operational responsibility issues pursuant to the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"). Governor Lee is likely to sign Senate Bill No. 2473/House Bill No. 2507 very soon. This is a request that the Federal Aviation Administration ("FAA") notify the Director of the Aeronautics Division of the Tennessee Department of Transportation, John Paul Saalwaechter, PE, that the governance and operational responsibility of the CMAA shall not change until there is compliance with the Act.

Sincerely,

John P. Konvalinka

cc: Tim Kelly, Mayor
James Hall, Chairman

Exhibit B

May 1, 2026

*VIA EMAIL & U.S. MAIL*

The Honorable Bill Lee
Governor of Tennessee
State Capitol, 1st Floor
600 Dr. Martin L. King, Jr. Blvd.
Nashville, TN 37243
Bill.Lee@tn.gov

The Honorable Randy McNally
Lieutenant Governor
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
lt.gov.randy.mcnally@capitol.tn.gov

The Honorable Cameron Sexton
Speaker of the House
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
speaker.cameron.sexton@capitol.tn.gov

Re: Senate Bill No. 2473, House Bill No. 2507

Governor Lee, Lieutenant Governor McNally, and Speaker Sexton:

Pursuant to the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"),[1] any change in the governance or operational responsibility of the Chattanooga Metropolitan Airport (the "Airport") that does not have the consent of the current Chattanooga Metropolitan Airport Authority ("the Authority") must be approved by the Federal Aviation Administration ("FAA"). Senate Bill No. 2473/House Bill No. 2507, which awaits Governor Lee's signature at the time of this letter, changes the Airport's governance and operational responsibility. The Authority does not consent to this change.

The Act states that the FAA "shall not" approve of the change of airport sponsorship unless it receives one of the following:

(A) written documentation from the [Authority] consenting to the change in sponsorship or operation;
(B) notice of a final, non-reviewable judicial decision requiring such change; or
(C) notice of a legally-binding agreement between the parties involved.[2]

---

[1] FAA REAUTHORIZATION ACT OF 2024, PL 118-63, May 16, 2024, 138 Stat 1025.
[2] *Id.* at § 757(b)(1).

Exhibit B

The undersigned hereby submit this letter as a formal request to meet in an attempt to resolve outstanding issues so that the Authority can either document its consent to the change or reach an agreement pursuant to the Act. Please let the undersigned know when you will be available to meet to address this urgent issue.

Sincerely,

City of Chattanooga

Tim Kelly, Mayor

Chattanooga Metropolitan Airport Authority

James Hall, Chairman

cc: William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

STATE OF TENNESSEE

# Office of the Attorney General

JONATHAN SKRMETTI
ATTORNEY GENERAL AND REPORTER

P.O. BOX 20207, NASHVILLE, TN 37202
TELEPHONE (615)741-3491
FACSIMILE (615)741-2009

May 19, 2026

Tim Kelly
Mayor of Chattanooga
101 E. 11th St.
Chattanooga, TN 37402
mayor@chattanooga.gov

James Hall
Chairman
Chattanooga Metropolitan Airport Authority
1001 Airport Rd., Ste. 14
Chattanooga, TN 37421
jhall@chattairport.com

Dear Mayor Kelly and Chairman Hall:

I write regarding your May 1, 2026, letter to Governor Lee, Lieutenant Governor McNally, and Speaker Sexton concerning the impacts of Senate Bill 2473/House Bill 2507 (the "Airport Authority Bill") on the Chattanooga Metropolitan Airport Authority (the "Authority"), specifically the Authority's sponsorship under the under the Federal Aviation Act.

The statute you refer to—the FAA Reauthorization Act of 2024—deals in part with disputed changes of airport sponsorship. But the Airport Authority Bill does not alter the sponsorship of the Chattanooga Metropolitan Airport (the "Airport") under the Federal Aviation Act; it merely changes the appointers of the Authority's board. "Sponsorship" is an entity-level principle. 49 U.S.C. 47102(26) and 14 C.F.R. § 16.3 define "sponsor," as relevant here, as "a public agency" that applies for or receives Federal financial assistance. The Authority, a public agency, is a registered Tennessee nonprofit corporation (Secretary of State Control No. 000158195) established under Tenn. Code Ann. §§ 42-4-101, *et seq.* and remains the Airport's legal sponsor. The Airport Authority Bill changes nothing in this regard.

Because the Airport's sponsorship will remain the same before and after the Airport Authority Bill takes effect, the FAA Reauthorization Act of 2024 does not apply. Accordingly, no consent from the Authority or other formalities under that law are necessary. Please contact me if you have any additional questions. Thank you.

Sincerely,

James P. Urban, Senior Deputy Attorney General
James.Urban@ag.tn.gov | (615) 741-3739

Cc: William "Liam" McKenna, Chief Counsel
Federal Aviation Administration | 800 Independence Avenue SW, Washington, D.C. 20591

Exhibit B

GKH
GRANT KONVALINKA & HARRISON, P.C.

Ninth Floor, Republic Centre
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900

Telephone (423) 756-8400
Facsimile (423) 756-6518
www.gkhpc.com

Writer's email:
jkonvalinka@gkhpc.com

May 14, 2026

William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

***VIA EMAIL***

Mr. McKenna:

The undersigned represents the City of Chattanooga (City) and the Chattanooga Metropolitan Airport Authority (CMAA). Previously, you received correspondence on May 1, 2026, a copy of which is attached.

There has been no response to the City's and CMAA's request to attempt to resolve the governance and operational responsibility issues pursuant to the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"). Governor Lee is likely to sign Senate Bill No. 2473/House Bill No. 2507 very soon. This is a request that the Federal Aviation Administration ("FAA") notify the Director of the Aeronautics Division of the Tennessee Department of Transportation, John Paul Saalwaechter, PE, that the governance and operational responsibility of the CMAA shall not change until there is compliance with the Act.

Sincerely,

John P. Konvalinka

cc: Tim Kelly, Mayor
James Hall, Chairman

Exhibit C

May 1, 2026

*VIA EMAIL & U.S. MAIL*

The Honorable Bill Lee
Governor of Tennessee
State Capitol, 1st Floor
600 Dr. Martin L. King, Jr. Blvd.
Nashville, TN 37243
Bill.Lee@tn.gov

The Honorable Randy McNally
Lieutenant Governor
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
lt.gov.randy.mcnally@capitol.tn.gov

The Honorable Cameron Sexton
Speaker of the House
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
speaker.cameron.sexton@capitol.tn.gov

Re: Senate Bill No. 2473, House Bill No. 2507

Governor Lee, Lieutenant Governor McNally, and Speaker Sexton:

Pursuant to the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"),[1] any change in the governance or operational responsibility of the Chattanooga Metropolitan Airport (the "Airport") that does not have the consent of the current Chattanooga Metropolitan Airport Authority ("the Authority") must be approved by the Federal Aviation Administration ("FAA"). Senate Bill No. 2473/House Bill No. 2507, which awaits Governor Lee's signature at the time of this letter, changes the Airport's governance and operational responsibility. The Authority does not consent to this change.

The Act states that the FAA "shall not" approve of the change of airport sponsorship unless it receives one of the following:

(A) written documentation from the [Authority] consenting to the change in sponsorship or operation;

(B) notice of a final, non-reviewable judicial decision requiring such change; or

(C) notice of a legally-binding agreement between the parties involved.[2]

---

[1] FAA REAUTHORIZATION ACT OF 2024, PL 118-63, May 16, 2024, 138 Stat 1025.

[2] *Id.* at § 757(b)(1).

Exhibit C

The undersigned hereby submit this letter as a formal request to meet in an attempt to resolve outstanding issues so that the Authority can either document its consent to the change or reach an agreement pursuant to the Act. Please let the undersigned know when you will be available to meet to address this urgent issue.

Sincerely,

City of Chattanooga

Tim Kelly, Mayor

Chattanooga Metropolitan Airport Authority

James Hall, Chairman

cc: William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

GRANT KONVALINKA & HARRISON, P.C.

Ninth Floor, Republic Centre
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900

Telephone (423) 756-8400
Facsimile (423) 756-6518
www.gkhpc.com

Writer's email:
jkonvalinka@gkhpc.com

May 20, 2026

**VIA EMAIL AND FEDERAL EXPRESS**
William Liam McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue SW
Washington, D.C. 20591
liam.mckenna@faa.gov

Mr. McKenna:

The undersigned represents the City of Chattanooga (City) and the Chattanooga Metropolitan Airport Authority (CMAA). We have previously notified[1] you that there is a dispute because CMAA is the sponsor of record initially and does not consent to any change regarding the governance and operational responsibility issues contemplated by the State of Tennessee Senate Bill 2473/House Bill 2507.

This morning, Mayor Tim Kelly and Chairman Jim Hall received a letter from the Tennessee Attorney General, a copy of which is attached, that apparently overlooks the following excerpt of the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"):

> Definition of Disputed Change of Airport Sponsorship.-- In this section, the term "disputed change of airport sponsorship" means any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport, including any such change directed by judicial action or State or local legislative action where the airport sponsor of record initially does not consent to such change.

This letter is a request that the FAA issue a letter stating that, in compliance with § 757 of the Act, the FAA will continue to recognize the current CMAA board pending resolution of the disputed change of sponsorship.

[1] Attached for your convenience are certain written communications between representatives of the FAA and the undersigned.

Exhibit C

Sincerely,

John P. Konvalinka

cc: Bryan Bedford, Administrator
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

Jonathan Skrmetti, Attorney General
P.O. Box 20207
Nashville, TN 37202

**John Konvalinka**

**From:** John Konvalinka
**Sent:** Friday, April 10, 2026 8:57 AM
**To:** Phillip C Rogers
**Subject:** RE: Chattanooga Metropolitan Airport Authority
**Attachments:** CMAA Resolution Creating Chattanooga Metropolitan Airport Authority - June 28, 1985(3781490.2).pdf

Section 3 which is on 2nd and 3rd pages of the attached resolution provides the Mayor shall appoint the governing body of the authority but it is subject to the approval by the Board of Commissioners of the City of Chattanooga.

**From:** John Konvalinka
**Sent:** Thursday, April 9, 2026 8:12 PM
**To:** Phillip C Rogers <Phillip.C.Rogers@faa.gov>
**Subject:** Re: Chattanooga Metropolitan Airport Authority

I believe that it is the mayor of the city of Chattanooga Tim Kelly but will confirm tomorrow

On Apr 9, 2026, at 6:00 PM, Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov> wrote:

John,

Thanks. I was meaning who selects the members.

Thanks,

<image001.png>

Phillip C. Rogers
Program Manager, Southern Region, Memphis ADO
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
phillip.c.rogers@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Thursday, April 9, 2026 4:48 PM
**To:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Subject:** RE: Chattanooga Metropolitan Airport Authority

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.



Exhibit C

Attached is the information you requested. Let me know if you need anything else.

**From:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Sent:** Thursday, April 9, 2026 3:24 PM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** RE: Chattanooga Metropolitan Airport Authority
**Importance:** High

John,

Can you tell me the current makeup of the board that governs CHA?

Thanks,

<image001.png>

Phillip C. Rogers
Program Manager, Southern Region, Memphis ADO
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
phillip.c.rogers@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Monday, April 6, 2026 2:52 PM
**To:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Subject:** RE: Chattanooga Metropolitan Airport Authority

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Thks.

**From:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Sent:** Monday, April 6, 2026 11:39 AM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** RE: Chattanooga Metropolitan Airport Authority

John,

Received.

FYI – the email that you sent the original letter to is incorrect.

Thanks,

<image001.png>

Phillip C. Rogers
Program Manager, Southern Region, Memphis ADO
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
phillip.c.rogers@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Monday, April 6, 2026 10:37 AM
**To:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Subject:** FW: Chattanooga Metropolitan Airport Authority

You don't often get email from jkonvalinka@gkhpc.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Attached is the letter.

**From:** John Konvalinka
**Sent:** Saturday, March 28, 2026 2:16 PM
**To:** 'Rans.bkack@faa.gov' <Rans.bkack@faa.gov>
**Subject:** Chattanooga Metropolitan Airport Authority

Pleas acknowledge receipt.

Thank you.

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*
*jkonvalinka@gkhpc.com*

NOTICE: [illegible]

NOTICE: [illegible]



Exhibit C

FILED
SECRETARY OF STATE
1985 JUN 28 AM 9 52

I, H. D. Miller, Auditor of the City of Chattanooga, Tennessee, and as [illegible] keeper of the records of the Board of Commissioners of said [illegible], do hereby certify that the foregoing is a true, compared and correct copy of **Resolution** No. 16345, adopted by the Board of Commissioners of the City of Chattanooga, Tennessee on Ma- 29, 1985.

WITNESS my hand and the Seal of the City of Chattanooga, Tennessee, this 25thday of June, 1985.

[signature]
City Auditor and Clerk of
the Board of Commissioners,
Chattanooga, Tennessee.

Exhibit C

FILED
SECRETARY OF STATE
1985 JUN 28 AM 9 52

RESOLUTION NO. 16345

A RESOLUTION TO CREATE THE CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY.

---

WHEREAS, the City of Chattanooga is authorized by Tennessee Code Annotated §42-4-101 through §42-4-116 to create an airport authority; and

WHEREAS, a public hearing on the question of creating an airport authority was held pursuant to Tennessee Code Annotated §42-4-105 on May 29, 1985; and

WHEREAS, the Board of Commissioners of the City of Chattanooga have determined that the public convenience and necessity requires the creation of such an authority;

NOW, THEREFORE,

BE IT RESOLVED BY THE BOARD OF COMMISSIONERS OF THE CITY OF CHATTANOOGA, TENNESSEE:

SECTION 1. It is hereby determined and declared that the public convenience and necessity require the creation of an airport authority for the City of Chattanooga, Tennessee, pursuant to Tennessee Code Annotated §42-4-101, et seq., and that such an airport authority for the City of Chattanooga, Tennessee, be and is hereby created.

SECTION 2. The airport authority for the City of Chattanooga shall be designated the "Chattanooga Metropolitan Airport Authority" and shall have its principal offices at Lovell Field, Chattanooga, Tennessee.

SECTION 3. The Mayor shall appoint the governing body of the authority pursuant to the provisions of Tennessee Code Annotated §42-4-105. These appointments shall be subject to

Exhibit C

'03 JUN 28 AM 9 52

approval by the Board of Commissioners of the City of Chattanooga, Tennessee.

SECTION 4. The City Auditor shall file a certified copy of this resolution with the Secretary of State of the State of Tennessee, the Tennessee Aeronautics Commission, and the Federal Aviation Administration, each said certified resolution to be accompanied by a certified copy of the resolution to be hereafter adopted approving the appointment of the Board of Commissioners of said airport authority. Upon the adoption and filing of this resolution and the resolution approving the appointment of its Board of Commissioners, the Chattanooga Metropolitan Airport Authority shall constitute a body politic and corporate entity and shall immediately assume the powers and responsibilities set forth in Tennessee Code Annotated §42-4-101, et seq.

SECTION 5. The Mayor of the City of Chattanooga is hereby directed to negotiate subject to approval by the Board of Commissioners of the City of Chattanooga, a contract between the City of Chattanooga and the Chattanooga Metropolitan Airport Authority for the orderly transfer to the authority of the airport properties, functions and outstanding obligations of the City of Chattanooga in accordance with the provisions of Tennessee Code Annotated §47-4-101, et seq. Such agreement may include provisions for the reimbursement of the City of Chattanooga for its obligations issued for airport purposes, and such agreement may also include provisions for the payment of tax equivalents by the authority and its lessees on all or any part of the properties owned by the authority and any improvements owned by the authority or its lessees to the City of Chattanooga, and may provide for the creation of a civil service system and the retention of or continuation of civil service status, accrued pension, annual leave, sick leave, hospitalization, disability, and death benefits for employees of the authority.

FILED
SECRETARY OF STATE
1985 JUN 28 AM 9 52

SECTION 6. All ordinances, resolutions, and orders heretofore adopted in conflict herewith are, to the extent of such conflict, hereby repealed.

Duly passed and approved by the Mayor pursuant to Tennessee Code Annotated §42-4-104, this 29th day of May, 1985.

(SEAL)

GENE ROBERTS, MAYOR

ATTEST:

H. D. MILLER, CITY AUDITOR

MMc:lkt

**John Konvalinka**

| | |
|---|---|
| **From:** | John Konvalinka |
| **Sent:** | Tuesday, April 21, 2026 8:34 AM |
| **To:** | Rogers, Phillip C (FAA); Stovall, Jamal (FAA); Rivera-Davis, Melissa Y (FAA); Clark, Keturah A (FAA); John Briggs |
| **Subject:** | RE: Chattanooga Metropolitan Airport Authority - Compliance (Airport Board Composition) |
| **Attachments:** | Resolution No. 32863 City of Chattanooa's Financial and Economic Interest in and Proprietary Appointment Authority.pdf |

Attached is a resolution that was passed on April 14, 2026.

-----Original Appointment-----
**From:** Rogers, Phillip C (FAA) <Phillip.C.Rogers@faa.gov>
**Sent:** Monday, April 20, 2026 12:09 PM
**To:** Black, Rans (FAA); Stovall, Jamal (FAA); Rivera-Davis, Melissa Y (FAA); Clark, Keturah A (FAA); John Briggs; John Saalwaechter; Brian Fedders; John Konvalinka
**Subject:** Chattanooga Metropolitan Airport Authority - Compliance (Airport Board Composition)
**When:** Tuesday, April 21, 2026 3:00 PM-4:00 PM (UTC-06:00) Central Time (US & Canada).
**Where:** Microsoft Teams Meeting
**Importance:** High

All,

The purpose of this meeting is to discuss the proposed State of TN law that changes Airport Board Composition.

Feel free to forward this meeting invitation to other interested parties.

Thanks,

Phillip Rogers

---

## Microsoft Teams meeting

**Join:**
https://teams.microsoft.com/meet/276254477444277?p=OkJETAH87bNP8i016O

Meeting ID: 276 254 477 444 277

Passcode: NL9ec92o

Need help? | System reference



Exhibit C

**Dial in by phone**

+1 346-235-0792,,474619856# United States, Bammel

Find a local number

Phone conference ID: 474 619 856#

For organizers: Meeting options | Reset dial-in PIN

---



Exhibit C

RESOLUTION NO. 32863

A RESOLUTION RESTATING THE CITY OF CHATTANOOGA'S LONGSTANDING FINANCIAL AND ECONOMIC INTEREST IN AND PROPRIETARY APPOINTMENT AUTHORITY OVER ITS METROPOLITAN AIRPORT AUTHORITY.

---

**WHEREAS**, the City of Chattanooga ("City") has been authorized, in its corporate capacity, to establish, construct, equip, maintain, and operate an airport for the use of aeroplanes and other aircraft and may, through its City Council, lease or acquire real property for such use within or without the corporate limits of the City since it was granted that authority from the State of Tennessee by Private Act 1929, Ch. 2, §§ 2, 3, Ord. No. 11272, 5-2-02; and

**WHEREAS**, in 1985, the City created a Metropolitan Airport Authority pursuant to Tenn. Code Ann. § 42-1-101 *et seq*. to provide daily commercial air service to and from the City; and

**WHEREAS**, the City donated the land, equipment, and other personal property comprising the airport (then known as Lovell Field) to the Chattanooga Metropolitan Airport Authority, which the City had just created, for the purpose of the Metropolitan Airport Authority continuing commercial air service operations for the benefit of the City.

NOW, THEREFORE, BE IT RESOLVED BY THE CITY COUNCIL OF THE CITY OF CHATTANOOGA, TENNESSEE, that it reasserts its longstanding and proprietary right of appointment authority and control over the Chattanooga Metropolitan Airport Authority and the property donated by the City and comprising the airport, the diminution of which would not be in the best interest of Chattanooga's citizens and tourists utilizing that facility, would infringe upon the City's right to establish and maintain municipal airport facilities and/or would constitute an unreasonable taking from the City of Chattanooga.

ADOPTED: April 14, 2026

PAN/mem/v5



Exhibit C

**John Konvalinka**

| | |
|---|---|
| **From:** | Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov> |
| **Sent:** | Wednesday, April 29, 2026 9:27 AM |
| **To:** | Pam Cowan; Black, Rans (FAA); Clark, Keturah A (FAA) |
| **Cc:** | John Konvalinka; Yost, Kirby W.; Rogers, Phillip C (FAA) |
| **Subject:** | RE: Follow up from FAA Call |

Thank you, all!

I apologize for the duplicate requests for documentation. The request originated from Headquarters, and both the ADO and the Region (separate offices) are working to respond as quickly as possible to this time-sensitive matter.

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** Pam Cowan <pcowan@gkhpc.com>
**Sent:** Wednesday, April 29, 2026 9:03 AM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>; Black, Rans (FAA) <Rans.Black@faa.gov>; Clark, Keturah A (FAA) <Keturah.A.Clark@faa.gov>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** FW: Follow up from FAA Call

You don't often get email from pcowan@gkhpc.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

---

**From:** John Konvalinka
**Sent:** Wednesday, April 29, 2026 6:04 AM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>; Black, Rans (FAA) <Rans.Black@faa.gov>; Clark, Keturah A (FAA) <Keturah.A.Clark@faa.gov>
**Cc:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** RE: Follow up from FAA Call

I received a similar inquiry from Phillip Rogers, and I have sent him the attached deed as well.

Please note page 41 of the pdf or the reference at the top of the page in the left corner, which is Book 3284 page 581.



Exhibit C

Please let us know if the attachment is what you want.

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*
*jkonvalinka@gkhpc.com*

**From:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Sent:** Tuesday, April 28, 2026 9:02 PM
**To:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Black, Rans (FAA) <Rans.Black@faa.gov>; Clark, Keturah A (FAA) <Keturah.A.Clark@faa.gov>
**Subject:** RE: Follow up from FAA Call

Hello,

Yes, sir. The legal mechanism and document that transferred control of land and airport to the Authority (c. 1985). Additionally, is there any current proposal or action under consideration to transfer ownership or operational control of the airport back to the City? If so, please provide details and supporting documentation.

Thank you so much!

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Sent:** Tuesday, April 28, 2026 5:03 PM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Black, Rans (FAA) <Rans.Black@faa.gov>
**Subject:** RE: Follow up from FAA Call

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Ms. Rivera-Davis,

To my knowledge, there was no lease agreement. If you help me better understand the request, I can provide additional information and documentation to address it. Prior to 1985, the airport was operated directly by the City (so there was

no lease agreement, as the City was the entity operating). Are you looking for a copy of the deed by which the City transferred the land?

Thanks,
**Kirby W. Yost**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0254
F (423) 508-1254
kyost@chamblisslaw.com | www.chamblisslaw.com

**From:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Sent:** Tuesday, April 28, 2026 4:32 PM
**To:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>; Black, Rans (FAA) <Rans.Black@faa.gov>
**Subject:** RE: Follow up from FAA Call

Hello, Kriby:

HQs requested a copy of the original lease agreement between the City and the Authority. Can you please provide this?

Thanks!

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Sent:** Friday, April 24, 2026 8:18 AM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>; John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** RE: Follow up from FAA Call

You don't often get email from kyost@chamblisslaw.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

No problem at all. Thank you for the confirmation. Would it be possible to have a brief call today? John and I are available between 11 and 1 if anytime in that window would work for you. We only need a few minutes. Please let us know if the time works and if so, what number?

Best,
**Kirby W. Yost**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0254
F (423) 508-1254
kyost@chamblisslaw.com | www.chamblisslaw.com

**From:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Sent:** Thursday, April 23, 2026 7:18 PM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Cc:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** RE: Follow up from FAA Call

[EXTERNAL EMAIL]

Hello, and yes, I did. Kirby, I apologize for not sending confirmation. I have elevated this case to HQs and our legal department and am standing by on how to proceed.

Thanks,

Melissa

Melissa Y. Rivera-Davis
Manager, Safety & Standards Branch,
Southern Region (ASO-620)
Office of Airports | Federal Aviation Administration
U.S. Department of Transportation
(470) 658-9827 (c)
melissa.y.rivera-davis@faa.gov

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Thursday, April 23, 2026 3:29 PM
**To:** Rivera-Davis, Melissa Y (FAA) <Melissa.Y.Rivera-Davis@faa.gov>
**Cc:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Subject:** FW: Follow up from FAA Call



Exhibit C

You don't often get email from jkonvalinka@gkhpc.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

I am forwarding Kirby's email of April 21 since your confirmation appeared to forward my email sending the City's resolution. Please let us know you received Kirby's email.

Thanks; hope to hear something soon.

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*
*jkonvalinka@gkhpc.com*

**From:** Yost, Kirby W. <kyost@chamblisslaw.com>
**Sent:** Tuesday, April 21, 2026 5:58 PM
**To:** melissa.y.rivera-davis@faa.gov
**Cc:** John Konvalinka <jkonvalinka@gkhpc.com>
**Subject:** Follow up from FAA Call

Ms. Rivera-Davis,

Thank you for the discussion today. First, as we discussed on the call, the Chattanooga Metropolitan Airport Authority does not concur that the transfer is consistent with federal law and the satisfaction of the FAA (as the FAA Compliance Guideline Letter 2021-1 describes).

To follow up on the reasons for our concerns, as we expressed on the call, we attach a more detailed list of those concerns. I also attach a copy of the 2021 FAA Compliance letter referenced above.

Separately, our understanding from the FAA Reauthorization Act of 2024 (Pub. L 118-63, Title VII, Section 757) is that any State "considering whether to take an action (including by drafting legislation) that would impact the ownership, sponsorship, governance, or operations of a federally obligated, publicly owned airport may request from the Administrator..." technical assistance regarding the interrelationship between Federal and State or local requirements applicable to any such action; and review and comment on such action. More importantly, the Act states (in subsection 3(B)) that "The Administrator may deny a change in the ownership, sponsorship, or governance of, or operational responsibility for, a federally obligated, publicly owned airport if a State or local legislative body or public agency does not seek technical assistance under subparagraph A with respect to such change." It does not appear that the State has sought technical assistance from the FAA on this proposed change of governance or discussed this with the Airport Authority governing body.

We are available to discuss further or answer any questions that you may have.

Best,



Exhibit C

**Kirby W. Yost**

Chambliss, Bahner & Stophel, P.C.
Liberty Tower
605 Chestnut Street, Suite 1700
Chattanooga, TN 37450

P (423) 757-0254
F (423) 508-1254
kyost@chamblisslaw.com | www.chamblisslaw.com

This transmission is confidential and may be privileged or proprietary. If you are not the intended recipient, you are not authorized to use the information in this transmission in any way. Please inform the sender immediately if you have received this transmission in error and permanently delete and destroy the original and any copies of the information.

Personal messages and attachments express the views of the sender and are not to be attributed to Chambliss, Bahner & Stophel, P.C.

NOTICE: [illegible]

NOTICE: [illegible]



Exhibit C

**RESOLUTION OF THE BOARD OF COMMISSIONERS OF CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY**

WHEREAS, in 1985, the City of Chattanooga, TN (the "City") created a Metropolitan Airport Authority pursuant to Tenn. Code Ann. § 42-4-101 et. seq. and City Resolution No. 16345 for the public convenience and necessity;

WHEREAS, the City donated the land, equipment, and other personal property comprising the airport (then known as Lovell Field) to the Chattanooga Metropolitan Airport Authority ("CMAA") for the purpose of CMAA continuing commercial air service and general aviation operations;

WHEREAS, CMAA is a federally-obligated, publicly-owned, public use airport;

WHEREAS, under Tenn. Code Ann. § 42-4-105(a)(1)(D), members of the Board of CMAA are persons of good standing and reputation appointed by the City Mayor and approved by City Council, who shall have no financial interest in an airport or its concessions;

WHEREAS, legislation recently approved by the Tennessee legislature, SB 2473/HB 2507 (the "State Legislation") constitutes an action that seeks to change the ownership, federal sponsorship, governance of, or operational responsibility for a federally obligated, publicly-owned, public use airport, as described in the FAA Reauthorization Act of 2024 (Pub. L. 118-63, Title VII, Section 757);

WHEREAS, the Board previously voted by written consent action to engage attorney D. Kirk Shaffer PLLC (the "Consultant") in connection with the State Legislation

**NOW, THEREFORE, BE IT RESOLVED by the Board of Commissioners of CMAA that CMAA disputes the changes made by the State Legislation.**

**BE IT FURTHER RESOLVED that the Board hereby ratifies and affirms engagement of the Consultant, as previously expressed in Action by Consent.**

Adopted effective this 1st day of May, 2026:

**CHAIRMAN OF THE BOARD OF COMMISSIONERS:**

By: [signature]
Name: Jim Hall, Chairman

Attest:

[signature]
Secretary

Exhibit C

GKH
GRANT KONVALINKA & HARRISON, P.C.

Ninth Floor, Republic Centre
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900

Telephone (423) 756-8400
Facsimile (423) 756-6518
www.gkhpc.com

Writer's email:
jkonvalinka@gkhpc.com

May 14, 2026

William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

***VIA EMAIL***

Mr. McKenna:

The undersigned represents the City of Chattanooga (City) and the Chattanooga Metropolitan Airport Authority (CMAA). Previously, you received correspondence on May 1, 2026, a copy of which is attached.

There has been no response to the City's and CMAA's request to attempt to resolve the governance and operational responsibility issues pursuant to the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"). Governor Lee is likely to sign Senate Bill No. 2473/House Bill No. 2507 very soon. This is a request that the Federal Aviation Administration ("FAA") notify the Director of the Aeronautics Division of the Tennessee Department of Transportation, John Paul Saalwaechter, PE, that the governance and operational responsibility of the CMAA shall not change until there is compliance with the Act.

Sincerely,

John P. Konvalinka

cc: Tim Kelly, Mayor
James Hall, Chairman

Exhibit C

May 1, 2026

*VIA EMAIL & U.S. MAIL*

The Honorable Bill Lee
Governor of Tennessee
State Capitol, 1st Floor
600 Dr. Martin L. King, Jr. Blvd.
Nashville, TN 37243
Bill.Lee@tn.gov

The Honorable Randy McNally
Lieutenant Governor
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
lt.gov.randy.mcnally@capitol.tn.gov

The Honorable Cameron Sexton
Speaker of the House
425 Rep. John Lewis Way N.
Suite 600 Cordell Hull Bldg.
Nashville, TN 37243
speaker.cameron.sexton@capitol.tn.gov

Re: Senate Bill No. 2473, House Bill No. 2507

Governor Lee, Lieutenant Governor McNally, and Speaker Sexton:

Pursuant to the Federal Aviation Act, as amended by the Reauthorization Act of 2024 (the "Act"),[1] any change in the governance or operational responsibility of the Chattanooga Metropolitan Airport (the "Airport") that does not have the consent of the current Chattanooga Metropolitan Airport Authority ("the Authority") must be approved by the Federal Aviation Administration ("FAA"). Senate Bill No. 2473/House Bill No. 2507, which awaits Governor Lee's signature at the time of this letter, changes the Airport's governance and operational responsibility. The Authority does not consent to this change.

The Act states that the FAA "shall not" approve of the change of airport sponsorship unless it receives one of the following:

(A) written documentation from the [Authority] consenting to the change in sponsorship or operation;
(B) notice of a final, non-reviewable judicial decision requiring such change; or
(C) notice of a legally-binding agreement between the parties involved.[2]

---

[1] FAA REAUTHORIZATION ACT OF 2024, PL 118-63, May 16, 2024, 138 Stat 1025.
[2] *Id.* at § 757(b)(1).

The undersigned hereby submit this letter as a formal request to meet in an attempt to resolve outstanding issues so that the Authority can either document its consent to the change or reach an agreement pursuant to the Act. Please let the undersigned know when you will be available to meet to address this urgent issue.

Sincerely,

City of Chattanooga

Tim Kelly, Mayor

Chattanooga Metropolitan Airport Authority

James Hall, Chairman

cc: William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D. C. 20591

STATE OF TENNESSEE

# Office of the Attorney General

JONATHAN SKRMETTI
ATTORNEY GENERAL AND REPORTER

P.O. BOX 20207, NASHVILLE, TN 37202
TELEPHONE (615)741-3491
FACSIMILE (615)741-2009

May 19, 2026

Tim Kelly
Mayor of Chattanooga
101 E. 11th St.
Chattanooga, TN 37402
mayor@chattanooga.gov

James Hall
Chairman
Chattanooga Metropolitan Airport Authority
1001 Airport Rd., Ste. 14
Chattanooga, TN 37421
jhall@chattairport.com

Dear Mayor Kelly and Chairman Hall:

I write regarding your May 1, 2026, letter to Governor Lee, Lieutenant Governor McNally, and Speaker Sexton concerning the impacts of Senate Bill 2473/House Bill 2507 (the "Airport Authority Bill") on the Chattanooga Metropolitan Airport Authority (the "Authority"), specifically the Authority's sponsorship under the under the Federal Aviation Act.

The statute you refer to—the FAA Reauthorization Act of 2024—deals in part with disputed changes of airport sponsorship. But the Airport Authority Bill does not alter the sponsorship of the Chattanooga Metropolitan Airport (the "Airport") under the Federal Aviation Act; it merely changes the appointers of the Authority's board. "Sponsorship" is an entity-level principle. 49 U.S.C. 47102(26) and 14 C.F.R. § 16.3 define "sponsor," as relevant here, as "a public agency" that applies for or receives Federal financial assistance. The Authority, a public agency, is a registered Tennessee nonprofit corporation (Secretary of State Control No. 000158195) established under Tenn. Code Ann. §§ 42-4-101, *et seq.* and remains the Airport's legal sponsor. The Airport Authority Bill changes nothing in this regard.

Because the Airport's sponsorship will remain the same before and after the Airport Authority Bill takes effect, the FAA Reauthorization Act of 2024 does not apply. Accordingly, no consent from the Authority or other formalities under that law are necessary. Please contact me if you have any additional questions. Thank you.

Sincerely,

James P. Urban, Senior Deputy Attorney General
James.Urban@ag.tn.gov | (615) 741-3739

Cc: William "Liam" McKenna, Chief Counsel
Federal Aviation Administration | 800 Independence Avenue SW, Washington, D.C. 20591

Exhibit C

**Pam Cowan**

---

**From:** John Konvalinka
**Sent:** Monday, June 8, 2026 4:00 PM
**To:** McKenna, Liam (FAA)
**Cc:** Kirk Shaffer; Phil Noblett; Bednarczyk, Krystyna (FAA)
**Subject:** RE: Chattanooga Metropolitan Airport Authority

I did not receive a response by the end of last week. Is a response forthcoming?

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*
*jkonvalinka@gkhpc.com*

---

**From:** McKenna, Liam (FAA) <Liam.McKenna@faa.gov>
**Sent:** Tuesday, June 2, 2026 9:41 PM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Cc:** Kirk Shaffer <kirk@dkirkshaffer.com>; Phil Noblett <pnoblett@chattanooga.gov>; Bednarczyk, Krystyna (FAA) <Krystyna.Bednarczyk@faa.gov>
**Subject:** Re: Chattanooga Metropolitan Airport Authority

Mr. Konvalinka,

I appreciate your patience. I am aiming to get you a response by the end of the week.

Best,
Liam

**Liam Mckenna**
Chief Counsel (AGC-1)

Office: 202-267-3222
Email: liam.mckenna@faa.gov

Federal Aviation Administration
800 Independence Avenue SW
Washington, D.C. 20591

www.faa.gov

ATTORNEY-CLIENT PRIVILEGE AND/OR OTHER LEGAL PRIVILEGES MAY APPLY TO THIS COMMUNICATION - DO NOT CIRCULATE WITHOUT CONSENT OF SENDER This message (including attachments) is transmitted using a U.S. Government information system, and is intended only for the use of the individual or entity to which it is addressed and may contain information that is legally privileged, confidential, and exempt from disclosure under applicable law. If the reader of this message is not the intended recipient, you are hereby notified that any



Exhibit C

retention, dissemination, distribution, interception or copying of this communication is strictly prohibited, and may subject you to legal action. Reply to the sender if you received this email by accident, and then delete the email and any attachments. Thank you.

---

**From:** McKenna, Liam (FAA) <Liam.McKenna@faa.gov>
**Sent:** Monday, June 1, 2026 8:30 PM
**To:** John Konvalinka <jkonvalinka@gkhpc.com>
**Cc:** Kirk Shaffer <kirk@dkirkshaffer.com>; Phil Noblett <pnoblett@chattanooga.gov>; Bednarczyk, Krystyna (FAA) <Krystyna.Bednarczyk@faa.gov>
**Subject:** Re: Chattanooga Metropolitan Airport Authority

Mr. Konvalinka,

I am adding Krystyna Bednarczyk to the chain, who leads our airports law team. I will connect with you tomorrow regarding the anticipated timing of a response.

Best,
Liam McKenna

---

**From:** John Konvalinka <jkonvalinka@gkhpc.com>
**Sent:** Monday, June 1, 2026 19:30
**To:** McKenna, Liam (FAA) <Liam.McKenna@faa.gov>
**Cc:** Kirk Shaffer <kirk@dkirkshaffer.com>; Phil Noblett <pnoblett@chattanooga.gov>
**Subject:** Chattanooga Metropolitan Airport Authority

You don't often get email from jkonvalinka@gkhpc.com. Learn why this is important

**CAUTION:** This email originated from outside of the Federal Aviation Administration (FAA). Do not click on links or open attachments unless you recognize the sender and know the content is safe.

Mr. McKenna,

I have previously written to you on behalf of the City of Chattanooga and the Chattanooga Metropolitan Airport Authority on May 14, 2026 and again on May 20, 2026. (See the attached letters which were emailed to you on those respective dates). I have not yet received a response from you or any other representative of the FAA to either of those two letters. Will you please let me know when I can expect to receive a response from the FAA regarding the requests stated and reflected in my attached May 14, 2026 and May 20, 2026 letters.

*John P. Konvalinka*
*Grant, Konvalinka & Harrison, P.C.*
*633 Chestnut Street*
*Suite 900 Republic Centre*
*Chattanooga, TN 37450-0900*
*(423) 756-8400 Phone*
*(423) 756-6518 Facsimile*

*jkonvalinka@gkhpc.com*

---

**NOTICE:** This email message is for the sole use of the intended recipient(s) and may contain confidential and privileged information. Any unauthorized review, use, disclosure or distribution is prohibited. If you are not the intended recipient, please contact the sender by reply email and destroy all copies of the original message.

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

### A. Parties

Petitioners are the Chattanooga Metropolitan Airport Authority (an agency and instrumentality of the City of Chattanooga) and the City of Chattanooga, Tennessee.

Respondents are the Federal Aviation Administration and its current Administrator, Bryan Bedford.

### B. Ruling Under Review

This is an original action challenging the FAA and its Administrator's unreasonable delay in taking action on the Petitioner's aforementioned request to the FAA that the FAA take action in accordance with Section 757 regarding the "disputed" change of sponsorship, as defined in Section 757(d), of the Chattanooga airport as a result of the State of Tennessee's Takeover Act enacted on May 19, 2026 and which is to go into effect on July 1, 2026. Petitioners seek a writ of mandamus compelling the FAA and its Administrator to take the action requested by the Petitioners as mandated and/or in accordance with its duties and obligations reflected in Section 757 by a date certain before the July 1, 2025 effective date of the Takeover Act. Because the FAA and/or its Administrator have not taken any action on Petitioner's request, no citation to the Federal Register or other record exists.

**C. Related Cases**

This case has not come before this Court or any other previously, and counsel for Petitioners is not aware of any other related cases within the meaning of D.C. Circuit Rule 28(a)(1)(C).

## Rule 26.1 Disclosure Statement

No disclosure statement is required because the Petitioners are governmental entities. Petitioner Chattanooga Metropolitan Airport Authority is an agency and instrumentality of the City of Chattanooga, Tennessee.

**CERTIFICATE OF COMPLIANCE**

I certify that this document complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 5,342 words. This document complies with the typeface and type-style requirements for Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word, Times New Roman 14-point font.

This 18th day of June, 2026.

____*s/ D. Kirk Shaffer*______________
D. Kirk Shaffer

**CERTIFICATE OF SERVICE**

I certify that on June 18, 2026, I caused this petition to be served by first-class U.S. mail on respondents, as follows:

Bryan Bradford, Administrator
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D.C. 20591

William "Liam" McKenna, Chief Counsel
Federal Aviation Administration
800 Independence Avenue, SW
Washington, D.C. 20591

Federal Aviation Administration
800 Independence Avenue, SW
Washington, D.C. 20591

Todd Blanche, Attorney General
United States Department of Justice
950 Pennsylvania Avenue NW
Washington, D.C. 20591

_____*s/ D. Kirk Shaffer*________
D. Kirk Shaffer