**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 26-1166**

---

***In Re*** CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY and the CITY OF CHATTANOOGA, TENNESSEE

*Petitioners,*

*v.*

BRYAN BEDFORD, Administrator of the Federal Aviation Administration; and the FEDERAL AVIATION ADMINISTRATION

*Respondents.*

---

**RESPONSE IN OPPOSITION TO RESPONDENTS' MOTION FOR EXTENSION OF TIME TO FILE RESPONSE TO PETITIONERS' PETITION FOR WRIT OF MANDAMUS**

Petitioners Chattanooga Metropolitan Airport Authority and the City of Chattanooga, Tennessee hereby respond in opposition to the Respondents Federal Aviation Administration and Bryan Bedford, Administrator of the Federal Aviation Administration, (collectively, the "FAA")'s Motion for a 30-Day Extension of Time to File the Response to Petition for Writ of Mandamus (the "FAA's Motion"). For the reasons stated herein, Respondents oppose the FAA's Motion and respectfully submit that it should be denied.

1. Petitioners filed a petition for writ of mandamus on June 23, 2026. On July 30, 2026, this Court ordered the FAA to file a response to the mandamus petition within 30 days of the date of the July 30, 2026 Order.

2. The FAA's Motion was filed on August 13, 2026 requesting a thirty-day extension of the deadline in which to file its response brief, to and including September 30, 2026, stating that the FAA has not previously sought an extension of the deadline and that the requested extension is necessary to ensure adequate time to prepare a response.

3. The Petitioners and their counsel understand that circumstances can arise where additional time is needed to comply with certain pleading deadlines, *e.g.* where the parties have just now become aware of opposing parties' contentions/claims for relief and/or where the party requesting the extension needs to investigate and obtain additional information regarding the facts of the case and/or the legal principles involved in the dispute. However, those circumstances and justifications do not exist, and certainly do not merit the length of the extension request, in this case. This is particularly true when it was the unreasonable delay of the FAA that necessitated the filing of the Petition. Petitioners have long been asking the FAA "to act" in accordance with the straightforward, sequential and non-discretionary statutory framework concisely stated and provided in Section 757 of the FAA Reauthorization Act of 2024 for addressing contested changes in the

governance and operational responsibility of public, federally obligated airports, such as the Chattanooga airport.[1]

Frankly, the FAA requested extension of time to respond to the petition is just further evidence of the FAA's unreasonable and unwarranted delay "to act" pursuant to its duties enumerated in Section 757.

4. In considering the FAA's requested extension of time, the Petitioners acknowledge and recognize that the FAA was not on notice that it would be required by the Court to file a response to the Petition until the Court entered its July 30, 2026 Order. However, it is just as—if not more—important and should not be overlooked, that the FAA has been aware since late March 2026 that the State's proposed legislatively-directed changes to the governance and operational responsibility of the Chattanooga airport[2] were disputed, thus triggering the application of Section

---

[1] *See* Section 757 of the FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757) codified at 49 USCA § 47101– Policies, Statutory Notes ("Section 757") and stated verbatim on ECF Pages 27-29 of the Petition. Section 757 states that the FAA ultimately shall have the final and exclusive legal authority to approve any disputed changes in the governance and operational responsibility for public, federally obligated airports such as Chattanooga's airport. *See* Section 757(a)(1); *see also* Section 757(d) Section 757 provides that the FAA shall not consider whether to approve the implementation of such disputed changes until after the dispute regarding such changes in governance and operational responsibility is resolved by the party holding and contesting proposed changes to its governance rights ultimately consenting to such changes and/or through a judicial resolution of the disputed changes in governance or operational responsibility in favor of the party seeking to implement such changes. See Section757(b)(1).

[2] In April 2026, the Tennessee legislature passed an amendment to the Tennessee Metropolitan Airport Authority Act, which the Governor of Tennessee signed on

757 which was designed and codified by Congress in 2024 to apply and govern the precise circumstances of this case.

As stated in the undersigned counsel's written response to the FAA's request prior to the FAA's filing of this motion:

> The initial contact with FAA representatives was on or about March 28, 2026 to seek assistance for Chattanooga Metropolitan Airport Authority. Attached are the exchanges with the FAA and the statements were made that my client would receive answer to its inquiry about maintaining the status quo pursuant to Section 757. That did not happen before July 1 and now the governor, the speaker of the house, and the lieutenant governor have appointed 6 of the nine members of the Takeover Board claiming that they are now in charge in direct violation of Section 757.
>
> My client does not want to grant any extensions, but wants the FAA to do its job.

(See copy of the undersigned's August 13, 2026 email to FAA counsel, attached hereto as **<u>Exhibit A</u>**).[3]

---

May 19, 2026, as 2026 Public Acts chapter 978 which the State declared to be effective on July 1, 2026. The legislation vacates the entirety of the existing Board of the Chattanooga Airport Authority (an instrumentality of the City of Chattanooga which had been exclusively appointed and controlled by the City since 1985) and provides the State with the right to appoint six of the nine members to the newly composed Board—and thus, the control of—the governance of Chattanooga Airport Authority (the "Takeover Act" and the "Takeover Board") [See copy of Tennessee 2026 Public Acts chapter 978, Exhibit A to the Declaration of James E. Hall ("Hall Declaration") included in the Petition filed in this action on June 23, 2026, ECF pages 35-40.

[3] The attachment to, and forwarded by, the undersigned counsel's August 13, 2026 email to FAA counsel, contains copies of the same communications/documents which are included in Exhibit C to the Hall Declaration included in the Petition filed in this action on June 23, 2026, ECF pages 71-94; see also pages 69-70 therein.

Petitioners have asked nothing more from the FAA since late March than "to act" in accordance with Section 757 and advise the parties to the dispute that the sequential non-discretionary statutory framework directed by Section 757 must be followed to address the disputed changes in governance and operation responsibility of the Chattanooga airport. As referenced in the undersigned counsel's attached August 13, 2026 email to the FAA, Petitioners are asking the FAA "to act" in accordance with Section 757's non-discretionary statutory framework and advise the parties to the dispute that the status quo that existed prior to July 1, 2026 should be preserved while the State and the Petitioners litigate that dispute through the judicial process anticipated by and written into Section 757 by Congress.

5. In making the above-stated requests to the FAA before filing the Petition and in seeking the relief sought in this Petition, Petitioners are not asking the FAA or the Court to undertake or make any discretionary decisions that might require the FAA to obtain and any additional information or to assess any legal authority that it does not already have. Instead, the Petitioners are simply asking that the FAA "to act" and ensure that the statutory framework directed by Section 757 for resolving the disputed changes be followed while the disputed changes are being judicially addressed. The FAA's request for an extension of time to file a response to the Petition is just a further perpetuation of the FAA's unreasonable, and unexplainable, delay to act in accordance with the non-discretionary statutory

framework, which has been codified in Section 757 since May 2024, for the purpose of addressing the precise circumstances involved in this dispute.

The FAA's continued efforts to delay and/or refuse to respond to the Petitioners request for it to act in accordance with Section 757 are particularly confounding and inexplicable, in light of the action taken by the FAA in responding to the State's efforts in 2023 to enact and implement similar legislative changes in the governance and operational responsibility of the Metro Nashville airport only. In addressing that 2023 legislation, the FAA chose "to act" in accordance and consistent with the FAA policy that is the predecssor to and later codified by Congress in Section 757 in May 2024. (See copy of FAA letter dated June 26, 2023 addressing the changes in governance and operational responsibility of the Metro Nashville airport directed by the State's 2023 legislation, attached hereto as **Exhibit B**). The FAA has yet to explain why it has not yet acted in the same manner with respect to the "dispute" currently at issue, and being litigated, with respect to the similar legislative changes enacted in 2026..

## CONCLUSION

For the above-stated reasons, Petitioners respectfully submit that their opposition to the FAA's Motion is reasonable and fair under the particular circumstances of this case. Accordingly, Petitioners respectfully request that the

Court deny the FAA's Motion for an Extension of Time to File a Response to the Petition.

Alternatively, if the Court believes that some extension of time is warranted, Petitioners respectfully request that more limited extension be granted and/or if the Court believes that the fully requested extension is warranted, that the Court also require the FAA to undertake at least some efforts to limit the violations of the statutory framework of Section 757 already undertaken by the State while this case and the ongoing litigation concerning the disputed legislative changes in governance and operational control of the Chattanooga airport are pending and not yet fully and finally resolved.

Respectfully submitted,

**GRANT, KONVALINKA & HARRISON, P.C.**

By: *s/ John P. Konvalinka*

John P. Konvalinka
TN BPR No. 001780
DC Circuit Bar No. 67336
*Counsel for Petitioners*
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900
(423)756-8400 – Telephone
(423)756-6518 – Facsimile
jkonvalinka@gkhpc.com

**D. KIRK SHAFFER, PLLC.**

By: *s/ D. Kirk Shaffer*
D. Kirk Shaffer (#45500)
*Attorney for Petitioners*
2405 Avenue G
Bay City, TX 77414
615-587-4242 Telephone
kirk@dkirkshaffer.com

Dated: August 19, 2026

**CERTIFICATE OF SERVICE**

Pursuant to Rule 15(c) of the Federal Rules of Appellate Procedure, I hereby certify that I have this 19th day of August, 2026, caused to be served copies of the foregoing Notice of Related Case on the following persons via the Court's CM/ECF system:

Josh Koppel, Esq.
U.S. DEPARTMENT OF JUSTICE
Email: joshua.m.koppel@usdoj.gov

Steven Myers, Esq.
U.S. DEPARTMENT OF JUSTICE
Email: Steven.A.Myers@usdoj.gov

Jaynie Lilley, Esq.
U.S. DEPARTMENT OF JUSTICE
Email: jaynie.lilley2@usdoj.gove

Madeline Clark, Esq.
OFFICE OF THE TENNESSEE ATTORNEY GENERAL
Email: madeline.clark@ag.tn.gov

Joshua Minchin, Esq.
OFFICE OF THE TENNESSEE ATTORNEY GENERAL
Email: madeline.clark@ag.tn.gov

Harry S. Mattice, Jr.
THE MATTICE GROUP LLC
Email: sandy@thematticegroup.com

*s/ John P. Konvalinka*
John P. Konvalinka
TN BPR No. 001780
DC Circuit Bar No. 67336
GRANT, KONVALINKA &
HARRISON, P.C.
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900

**CERTIFICATE OF COMPLIANCE**

This response complies wit the type-volume limit of Federal Rule of Appellate Procedure 27(d)(2)(A) because it contains 1,590 words.

This response complies with the typeface and te type style requirements of Federal Rule of Appellate Procedure 27 because tis brief has been prepared in proportionally spaced typeface using Word 14-point Times New Roman typeface.

*s/ John P. Konvalinka*
JOHN P. KONVALINKA