**[ORAL ARGUMENT NOT SCHEDULED]**

**No. 26-1166**

---

**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

IN RE: CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY and CITY OF CHATTANOOGA, TENNESSEE,

Petitioners.

---

On Petition for Writ of Mandamus to the Federal Aviation Administration

---

# RESPONSE TO PETITION FOR WRIT OF MANDAMUS

---


*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

WILLIAM McKENNA
*Chief Counsel*

KRYSTYNA BEDNARCZYK
*Assistant Chief Counsel, Federal Aviation Administration*

*Department of Transportation*

BRETT A. SHUMATE
*Assistant Attorney General*

STEVEN A. MYERS
JOSHUA M. KOPPEL
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*

## CERTIFICATE AS TO PARTIES, RULINGS, AND RELATED CASES

Pursuant to D.C. Circuit Rule 28(a)(1), the undersigned counsel certifies as follows:

### A. Parties and Amici

Petitioners are Chattanooga Metropolitan Airport Authority and the City of Chattanooga, Tennessee. Respondents are the Federal Aviation Administration (FAA) and Bryan Bedford, Administrator of the FAA. The State of Tennessee has intervened as a respondent. No other parties, intervenors, or amici curiae have entered appearances in this Court.

### B. Rulings Under Review

The mandamus petition challenges respondent FAA's alleged failure to act.

### C. Related Cases

This case has not previously been before this Court or any other court. Petitioners have filed a suit raising similar issues in Tennessee state court. *Chattanooga Metro. Airport Auth. v. Lee*, No. 26-0431 (Tenn. Ch. Ct.). In addition, *Metropolitan Government of Nashville &*

*Davidson County v. FAA*, No. 26-1178 (D.C. Cir.), involves different parties but raises a similar issue.

*/s/ Joshua M. Koppel*
Joshua M. Koppel

## TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES ....... iv

GLOSSARY ....... viii

INTRODUCTION ....... 1

STATEMENT ....... 3

A. Statutory Background ....... 3

B. Factual And Procedural Background ....... 6

ARGUMENT ....... 9

I. THIS COURT LACKS JURISDICTION OVER THE MANDAMUS PETITION ....... 9

II. PETITIONERS CANNOT SATISFY THE REQUIREMENTS FOR A WRIT OF MANDAMUS ....... 15

CONCLUSION ....... 22

CERTIFICATE OF COMPLIANCE

## TABLE OF AUTHORITIES

**Cases:** **Page(s)**

*Cheney v. U.S. Dist. Ct. for D.C.*,
542 U.S. 367 (2004) ........................................................ 15

*Center for Biological Diversity, In re*,
53 F.4th 665 (D.C. Cir. 2022) ........................................................ 15

*Core Commc'ns, Inc., In re*,
531 F.3d 849 (D.C. Cir. 2008) ........................................................ 19

*INS v. Chadha*,
462 U.S. 919 (1983) ........................................................ 12

*National Nurses United, In re*,
47 F.4th 746 (D.C. Cir. 2022) ........................................ 10, 15, 16

*Norton v. Southern Utah Wilderness All.*,
542 U.S. 55 (2004) ........................................................ 16

*Public Emps. for Env't Resp., In re*,
957 F.3d 267 (D.C. Cir. 2020) ........................................................ 9

*Telecommunications Rsch. & Action Ctr. v. FCC*,
750 F.2d 70 (D.C. Cir. 1984) ........................................ 9-10, 19, 21

*Thomas v. Holder*,
750 F.3d 899 (D.C. Cir. 2014) ........................................................ 16

*United States v. Ehmer*,
87 F.4th 1073 (9th Cir. 2023) ........................................................ 12

*United States v. Welden*,
377 U.S. 95 (1964) ........................................................ 12

**Statutes:**

FAA Reauthorization Act of 2024, Pub. L. No. 118-63, tit. VII, subtitle A, 138 Stat. 1025:
§ 757, 138 Stat. at 1285-1287 .......... 1, 11
§ 757(a)(1), 138 Stat. at 1285 .......... 5, 17, 20
§ 757(b)(1), 138 Stat. at 1286 .......... 5, 18, 20
§ 757(b)(1)-(2), 138 Stat. at 1286 .......... 13
§ 757(b)(2), 138 Stat. at 1286 .......... 6, 17, 18
§ 757(c), 138 Stat. at 1286 .......... 6, 14, 20
§ 757(d), 138 Stat. at 1286 .......... 20

28 U.S.C. § 1651 .......... 10, 15

49 U.S.C. § 40104(a) .......... 3

49 U.S.C. § 46110(a) .......... 2, 10-11, 14

49 U.S.C. § 47101 .......... 11, 12

49 U.S.C. § 47102(3) .......... 3

49 U.S.C. § 47102(26) .......... 3

49 U.S.C. § 47104(a) .......... 3

49 U.S.C. § 47106 .......... 14

49 U.S.C. § 47106(a)(5) .......... 4

49 U.S.C. § 47107 .......... 4, 14

49 U.S.C. § 47108(a) .......... 3

1969 Tenn. Pub. Acts, ch. 174, § 5 .......... 7

1984 Tenn. Pub. Acts, ch. 853, § 1 .......... 7

1999 Tenn. Pub. Acts, ch. 155, § 1 .......... 7

2002 Tenn. Pub. Acts, ch. 562, § 1 ........................................................ 7

2026 Tenn. Pub. Acts, ch. 978,
§ 1 ........................................................................................ 8
§ 7 ........................................................................................ 8

Tenn. Code Ann. § 42-4-101 et seq. ........................................................ 6

Tenn. Code Ann. § 42-4-102 ........................................................ 6

Tenn. Code Ann. § 42-4-104 ........................................................ 6

Tenn. Code Ann. § 42-4-105 ........................................................ 6

Tenn. Code Ann. § 42-4-106 ........................................................ 6

**Regulations:**

49 C.F.R. § 1.83(a) ........................................................ 3

**Legislative Materials:**

S. 2473, 114th Gen. Assemb., Reg. Sess. (Tenn. 2026) ......................... 20

**Other Authorities:**

FAA:
*Airport Sponsor & Airport User Rights and Responsibilities*,
https://perma.cc/X8QF-9ZB8 ........................................................ 4

*Assurances: Airport Sponsors*,
(Apr. 2025), https://perma.cc/CK9E-W8TS ........................................ 4

U.S. Dep't of Transp., Order 5100.38D, Change 1, *Airport Improvement Program Handbook*, ch. 2,
(Feb. 26, 2019), https://perma.cc/SXB9-WUQA ................................... 5

U.S. Dep't of Transp., Order 5190.6C, *Airport Compliance Manual*,
ch. 6, (Feb. 20, 2026), https://perma.cc/K72S-T57J ............................ 4

Memorandum from Kevin C. Willis, Dir., Off. of Airport Compliance & Mgmt. Analysis, FAA, to Reg'l Dirs. & Reg'l Compliance Specialists, (July 28, 2021), https://perma.cc/2RP3-LUB8 .................................. 4-5

Off. of the L. Revision Couns., U.S. House of Representatives, *About Classification of Laws to the United States Code*, https://perma.cc/5RN4-44DJ ............................................................ 11

## GLOSSARY

| | |
|---|---|
| Administrator | FAA Administrator |
| Airport Authority | Chattanooga Metropolitan Airport Authority |
| FAA | Federal Aviation Administration |

## INTRODUCTION

The Federal Aviation Administration (FAA) respectfully submits this response in opposition to the petition for a writ of mandamus, which seeks to compel FAA to "forward a written communication … stating and expressly acknowledging that … the FAA does recognize[] and will continue to recognize the currently existing Board of the Chattanooga [Metropolitan] Airport Authority [(Airport Authority)] and the currently existing governance of such authority pending resolution of" a challenge to a recent state law changing the composition of the board of the Airport Authority. Pet. 25-26. Petitioners contend that the agency's failure to send such a communication violates its statutory obligations related to approval of changes in the sponsorship, governance, or responsibility of a federally obligated airport. *See* FAA Reauthorization Act of 2024, Pub. L. No. 118-63, tit. VII, subtitle A, § 757, 138 Stat. 1025, 1285-1287.

The mandamus petition should be dismissed for lack of jurisdiction. The All Writs Act provides jurisdiction over a claim seeking to compel agency action where the court of appeals would have exclusive jurisdiction over a case seeking review of that action. But as

explained more fully below, this Court would lack jurisdiction over a petition for direct review of an FAA decision under Section 757 of the FAA Reauthorization Act of 2024 because Section 757 does not fall within the category of statutes for which 49 U.S.C. § 46110(a) vests this Court with jurisdiction.

Even if this Court had jurisdiction, the petition should be denied. Mandamus is a drastic remedy, reserved for extraordinary circumstances not present here. Petitioners have identified no duty requiring FAA to act as they request; while the statute identifies certain circumstances in which FAA may *not* approve a change in airport sponsorship, there is no provision requiring FAA to send a communication of the sort petitioners demand here. In addition, petitioners have alternative avenues of relief for resolving their challenge to the state law, namely litigation with Tennessee, and indeed petitioners contend that they are pursuing a parallel challenge of exactly that sort in state court.

Mandamus is equally unwarranted on petitioners' claim of unreasonable delay. Even if FAA had some obligation to act in the way petitioners suggest, FAA has not unreasonably delayed. Section 757

sets forth no timeline for the agency to approve a change to the sponsor of an airport—let alone to issue a statement saying it has not done so—and the agency cannot be faulted for failing to act before any such change was enacted. Mandamus relief is therefore not warranted.

## STATEMENT

### A. Statutory Background

1. FAA is charged with "encourag[ing] the development of civil aeronautics and safety of air commerce" in the United States. 49 U.S.C. § 40104(a). To further that mission, Congress has given FAA authority to grant money to maintain a safe and efficient system of public-use airports. *Id.* § 47104(a); *see* 49 C.F.R. § 1.83(a) (delegating authority of the Secretary of Transportation to FAA). Such grants can be issued to fund airport development activities such as "constructing, repairing, or improving" an airport, acquiring or installing equipment, or acquiring land for future airport development. 49 U.S.C. § 47102(3).

FAA may approve a project grant application only if, *inter alia*, the "sponsor"—that is, the public agency or private owner of an airport that submits the grant application and enters into any grant agreements with the United States, 49 U.S.C. §§ 47102(26), 47108(a)—

"has authority to carry out the project as proposed," *id.* § 47106(a)(5). FAA must also receive certain written assurances, or obligations, before it approves a grant. *Id.* § 47107. These obligations ensure that the public's interest in civil aviation will be served. *See* FAA, *Airport Sponsor & Airport User Rights and Responsibilities* 2, https://perma.cc/X8QF-9ZB8. One of the assurances that FAA requires is that a sponsor "will not take or permit any action which would operate to deprive it of any of the rights and powers necessary to perform" any of the terms and conditions of the grant agreement "without the written approval of the Secretary." FAA, *Assurances: Airport Sponsors* 6 (Apr. 2025), https://perma.cc/CK9E-W8TS. When a sponsor proposes transferring responsibility for an airport to a new sponsor, FAA conducts a review to ensure that the proposed sponsor can assume all grant assurances and other federal obligations before it permits the transfer. *See* FAA, U.S. Dep't of Transp., Order 5190.6C, *Airport Compliance Manual*, ch. 6, at 6-8 to 6-16 (Feb. 20, 2026), https://perma.cc/K72S-T57J; Memorandum from Kevin C. Willis, Dir., Off. of Airport Compliance & Mgmt. Analysis, FAA, to Reg'l Dirs. & Reg'l Compliance Specialists (July 28, 2021), https://perma.cc/2RP3-

LUB8; FAA, U.S. Dep't of Transp., Order 5100.38D, Change 1, *Airport Improvement Program Handbook*, ch. 2, at 2-20 to 2-21 (Feb. 26, 2019), https://perma.cc/SXB9-WUQA.

In the FAA Reauthorization Act of 2024, Congress provided for cases in which there is "a disputed change of airport sponsorship." Pub. L. No. 118-63, § 757(a)(1), 138 Stat. at 1287. In such a case, the FAA Administrator "shall have the sole legal authority to approve any change in the sponsorship of, or operational responsibility for, the airport." *Id.* The Administrator "shall not approve any disputed change" of sponsorship "unless the Administrator receives—(A) written documentation from the airport sponsor of record consenting to the change … ; (B) notice of a final, non-reviewable judicial decision requiring such change; or (C) notice of a legally-binding agreement between the parties involved." *Id.* § 757(b)(1), 138 Stat. at 1286. In addition, the Administrator "shall independently determine whether the proposed sponsor or operator is able to satisfy Federal requirements for airport sponsorship or operation" and may impose such "terms and conditions" as the Administrator determines necessary to ensure that any change in airport sponsorship "is consistent with existing Federal

law, regulations, existing grant assurances, and Federal land conveyance obligations." *Id.* § 757(c), 138 Stat. at 1286. Congress has provided, however, that the Administrator "may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction." *Id.* § 757(b)(2), 138 Stat. at 1286.

2. Tennessee law governs the creation of metropolitan airport authorities in the State, *see* Tenn. Code Ann. § 42-4-101 *et seq.*, and it permits any city or metropolitan government to create such an authority as a public and governmental body to acquire, operate, and finance airports and related facilities, *see id.* §§ 42-4-102, 42-4-104. State law also governs the composition of the board of commissioners of airport authorities, *id.* § 42-4-105, and the appointment of officers of those authorities, *id.* § 42-4-106.

**B. Factual And Procedural Background**

1. The Chattanooga Metropolitan Airport, known as Lovell Field, is a federally obligated airport, meaning that it has received project grants from FAA and is bound by obligations to the federal government. Pet. 5, 11. In 1985, the City of Chattanooga created the

Airport Authority, pursuant to the State's metropolitan-airport-authorities law, and transferred the Chattanooga airport property from the city to the Airport Authority. Pet. Ex. B, at 48-51.[1] The Airport Authority still owns and operates the Chattanooga airport today. Pet. 5.

At the time the Airport Authority was created, state law permitted the Mayor of Chattanooga, with the approval of the city's board of commissioners, to appoint the governing board of the Airport Authority. *See* 1984 Tenn. Pub. Acts, ch. 853, § 1; Pet. Ex. B, at 49-50. State law has occasionally changed the composition or appointment of the board of commissioners. For example, in 1999, state law expanded the board from seven commissioners to eleven, at least three of whom could not be residents of Chattanooga. *Compare* 1999 Tenn. Pub. Acts, ch. 155, § 1, *with* 1969 Tenn. Pub. Acts, ch. 174, § 5. In 2002, the State shrank the board to nine members and removed some of the restrictions on who could be appointed. *See* 2002 Tenn. Pub. Acts, ch. 562, § 1.

[1] Because the petition's exhibits are long and unpaginated, page numbers to petition exhibits refer to CM/ECF's pagination of the 99-page petition filing. Page numbers to the petition refer to petitioners' pagination of that document.

In May 2026, Tennessee enacted a law that, effective July 1, "vacated and reconstituted" the board of commissioners of all metropolitan airport authorities within the State and provided for each airport to have a nine-person board, with state officials to appoint a majority of the commissioners on each board. 2026 Tenn. Pub. Acts, ch. 978, §§ 1, 7. On May 1, 2026, after the state legislature enacted the law but before the governor signed it, the board of commissioners of the Airport Authority passed a resolution "disput[ing] the changes made by the State Legislation." Pet. Ex. B., at 61. The Airport Authority further sent letters to the Governor of Tennessee and FAA stating that the Airport Authority "does not consent to any change regarding the governance and operational responsibility issues contemplated by" the state law. Pet. Ex. C., at 69; *see also* Pet. Ex. B, at 41-42.

On June 18, 2026, the Airport Authority and the City of Chattanooga filed suit against state officials in state court alleging, *inter alia*, that the 2026 statue violates the Tennessee Constitution. Verified Complaint, *Chattanooga Metro. Airport Auth. v. Lee*, No. 26-0431 (Tenn. Ch. Ct. June 18, 2026). A motion for a temporary

injunction and a motion to dismiss are currently pending in that litigation.

2. The Airport Authority and the City of Chattanooga filed this mandamus petition on June 23, 2026. Petitioners seek an order directing FAA to "forward a written communication" to Tennessee, the Airport Authority, and the City "stating and expressly acknowledging that … FAA does recognize[] and will continue to recognize the currently existing Board of the Chattanooga Airport Authority … pending resolution of the disputed change of sponsorship regardless of Tennessee 2026 Public Acts chapter 978." Pet. 25.

## ARGUMENT

### I. THIS COURT LACKS JURISDICTION OVER THE MANDAMUS PETITION

A. This Court has "exclusive jurisdiction over mandamus petitions" alleging agency action unreasonably withheld or delayed when a statute "commits review of the relevant action to the courts of appeals." *In re Public Emps. for Env't Resp.*, 957 F.3d 267, 271 (D.C. Cir. 2020). In such a case, "the statutory commitment of review" of agency action, "read in conjunction with the All Writs Act," affords this Court jurisdiction. *Telecommunications Rsch. & Action Ctr. v. FCC*

(*TRAC*), 750 F.2d 70, 75 (D.C. Cir. 1984). But "[i]f … the court does not and would not have jurisdiction to review the agency action sought by petitioners, it cannot bootstrap jurisdiction via the All Writs Act." *In re National Nurses United*, 47 F.4th 746, 752 (D.C. Cir. 2022).

Petitioners invoke this Court's jurisdiction under the All Writs Act, 28 U.S.C. § 1651, arguing that "pursuant to 49 U.S.C. § 46110(a), this Court would have jurisdiction to review the actions of FAA if FAA had undertaken the action requested," *i.e.*, if FAA had issued a statement that it would continue to recognize the Chattanooga-appointed board of the Airport Authority until the requirements of Section 757 are met. Pet. 8. But petitioners are incorrect in asserting that § 46110(a) gives this Court jurisdiction to review any order of FAA issued pursuant to Section 757 of the FAA Reauthorization Act of 2024.

Section 46110(a) provides that "a person disclosing a substantial interest in an order issued by the Secretary of Transportation," or by the FAA Administrator "with respect to aviation duties and powers," "in whole or in part under this part [part A], part B, or subsection (*l*) or (r) of section 114 may apply for review of the order by filing a petition for review in the" Court of Appeals for the D.C. Circuit. 49 U.S.C.

§ 46110(a). An order arising under Section 757 of the FAA Reauthorization Act of 2024, however, is not an order "under" any of the listed portions of Title 49. To the contrary, when Congress enacted Section 757 of the FAA Reauthorization Act of 2024, Congress did not choose to codify its provisions anywhere in the U.S. Code—let alone in Title 49, Subtitle VII, Part A, Part B, or § 114. Pub. L. No. 118-63, § 757, 138 Stat. at 1285-1287.

Although Congress did not codify Section 757 in Title 49, the Office of the Law Revision Counsel of the U.S. House of Representatives elected to insert the provision as a statutory note to 49 U.S.C. § 47101. *See* Off. of the L. Revision Couns., U.S. House of Representatives, *About Classification of Laws to the United States Code*, https://perma.cc/5RN4-44DJ (explaining that the Office of the Law Revision Counsel "reviews every provision of every public law to determine whether it should go into the Code, and if so, where"). But the "decision to classify a freestanding provision" of public law, such as Section 757, as "a statutory note is an editorial judgment." *Id.* The Supreme Court has accordingly stated that where the "arrangement" of law "was made by a codifier without the approval of Congress, it should be given no weight."

*United States v. Welden*, 377 U.S. 95, 98 n.4 (1964) (quotation marks omitted); *cf. United States v. Ehmer*, 87 F.4th 1073, 1112 (9th Cir. 2023) (decision of the Office of the Law Revision Counsel to place enacted text in a particular subchapter of a non-positive-law title was a "merely editorial addition[] made by a congressional office, and not any part of a statute enacted by Congress" and thus "entitled to no weight"). Indeed, assigning legal significance to a decision of an internal office of one House of Congress would plainly be unconstitutional; Congress's actions have legal effect only when they comply with the requirements of bicameralism and presentment. *See INS v. Chadha*, 462 U.S. 919, 951 (1983).

The placement of Section 757 as a statutory note to 49 U.S.C. § 47101 is thus irrelevant to this Court's jurisdiction: although the principal text of § 47101 is itself in Title 49, Subtitle VII, Part B, Section 757 has not been placed there by Congress. Accordingly, an FAA order issued under Section 757 would not be subject to direct review in this Court, and this Court lacks jurisdiction over a mandamus petition seeking such an FAA order.

B. The petitioner in a related case has argued that a "Section 757 determination cannot be made without applying Part B requirements," and thus that any order under Section 757 is necessarily issued "in part under" Part B. Pet'r's Opp. to the Mot. to Dismiss filed by FAA Respondents 17-18, *Metropolitan Gov't of Nashville and Davidson Cnty., Tenn. v. FAA*, No. 26-1178 (D.C. Cir. Sept. 17, 2026). That is incorrect, as the particular allegations of the mandamus petition here demonstrate.

In this case, petitioners request an order requiring FAA to state that it "recognizes and will continue to recognize the currently existing Board of the Chattanooga Airport Authority … pending resolution of the disputed change of sponsorship," Pet. 19, 25—*i.e.*, until there is no "legal dispute … pending before a court of competent jurisdiction" and FAA receives "written documentation from the airport sponsor of record consenting to the change in sponsorship," "notice of a final, non-reviewable judicial decision requiring such change," or "notice of a legally-binding agreement between the parties," Pub. L. No. 118-63, § 757(b)(1)-(2), 138 Stat. at 1286. In other words, petitioners seek an FAA order that they believe is warranted entirely because of Section

757(b); such an order would not be issued, in whole or in part, under Part A, Part B, or § 114 of Title 49, Subtitle VII.

To be sure, some orders issued under Section 757 could arise in part under Title 49, Subtitle VII, Part B. That is because Section 757(c) provides that the FAA Administrator shall "determine whether the proposed sponsor or operator is able to satisfy Federal requirements for airport sponsorship or operation." Pub. L. No. 118-63, § 757(c), 138 Stat. at 1286. If the FAA Administrator issued an order declining to recognize a change in sponsorship on the basis that the proposed sponsor did not satisfy certain requirements in Part B, *see* 49 U.S.C. §§ 47106, 47107 (establishing conditions for grant approval)—or if a mandamus petitioner challenged FAA's failure to issue such an order—then this Court might have jurisdiction under 49 U.S.C. § 46110(a) or the All Writs Act. But FAA has not issued any order arising under Part B here, nor do petitioners seek such an order. Instead, petitioners seek an order that would be issued solely under the authority of Section 757(b)—and 49 U.S.C. § 46110(a) does not provide this Court jurisdiction to review such an order.

In short, the fact that *some* FAA orders issued under Section 757 could arise under Part B does not mean that the *particular* FAA order that petitioners seek here would arise under Part B. And the fact that this Court may have jurisdiction to review *some* FAA action under Section 757 does not give this Court jurisdiction to review the *particular* FAA inaction that petitioners challenge here.

## II. PETITIONERS CANNOT SATISFY THE REQUIREMENTS FOR A WRIT OF MANDAMUS

Even if this Court has jurisdiction, petitioners have not shown that mandamus is appropriate. This Court may issue a writ of mandamus to vindicate a "clear and indisputable" right, if "no other adequate means" of relief exists, and if the writ is "appropriate under the circumstances." *Cheney v. U.S. Dist. Ct. for D.C.*, 542 U.S. 367, 380-81 (2004) (quotation marks omitted); *see In re Center for Biological Diversity*, 53 F.4th 665, 673 (D.C. Cir. 2022); *see also* 28 U.S.C. § 1651. Petitioners' request flunks all three requirements.

A. The agency does not have "a crystal-clear legal duty," *In re National Nurses United*, 47 F.4th at 752, to send the correspondence that petitioners demand it send to various state officials. A writ of mandamus is "reserved only for the most transparent violations of a

clear duty to act." *Id.* (quotation marks omitted). "The duty must be incontrovertible and not a matter within the agency's discretion." *Id.*; *see also Thomas v. Holder*, 750 F.3d 899, 904 (D.C. Cir. 2014) ("[I]f the act [the mandamus petitioners] seek to compel is discretionary," the writ cannot issue, "as government officials have no clear duty to perform such acts."). When deciding whether an agency has a clear duty to act, this Court "look[s] to the statutory requirements imposed by Congress and whether an Executive Branch agency retains discretion over a particular action." *In re National Nurses United*, 47 F.4th at 752. As with the traditional writ of mandamus, "a claim under § 706(1) can proceed only where a plaintiff asserts that an agency failed to take a *discrete* agency action that it is *required to take*." *Norton v. Southern Utah Wilderness All.*, 542 U.S. 55, 64 (2004). A court may not order "even discrete agency action that is not demanded by law." *Id.* at 65.

Petitioners' theory is that FAA is obligated to issue a letter to various state officials indicating that it continues to recognize the original board and will not recognize the new one. But Section 757 does not even plausibly require the FAA to do so. That provision gives the FAA Administrator "sole legal authority to approve any change in the

sponsorship of" of an airport, Pub. L. No. 118-63, § 757(a)(1), 138 Stat. at 1285, but it does not *require* the Administrator to exercise that authority, much less on any particular timeline. *See* Pet. 22 (acknowledging that there is no specific timeline to respond to petitioners' request or to approve a change in the sponsorship). And it certainly does not require the Administrator to take the step that petitioners are demanding here—again, to send correspondence effectively stating that it will *not* "approve . . . [a] change in the sponsorship of" the Chattanooga airport. *Id.* § 757(a)(1), 138 Stat. at 1285.

Not only does Section 757 not require FAA to act on petitioners' request, but the statute expressly prohibits the Administrator from "evaluat[ing] or approv[ing] a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction." Pub. L. No. 118-63, § 757(b)(2), 138 Stat. at 1286. If petitioners are correct that their challenge to the state law's change in Board composition is a "disput[e]" within the meaning of Section 757, then the statute prohibits FAA from resolving such a dispute. *Id.*

Section 757(b)(2) makes clear the duty to decide a dispute over change in sponsorship belongs to the state court. *Id.*

Furthermore, petitioners have other adequate means of relief for their dispute over the change in the composition of the board of the Airport Authority. Petitioners may seek to resolve their challenge to the state law in court, as they have done. *Cf.* Pub. L. No. 118-63, § 757(b)(2), 138 Stat. at 1286 ("The Administrator may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction."); *id.* § 757(b)(1), 138 Stat. at 1286 (FAA "shall not approve any disputed change of airport sponsorship unless the Administrator receives … [notice of consent;] notice of a final, non-reviewable judicial decision requiring such change; or … notice of a legally-binding agreement between the parties involved.").

Finally, mandamus is not appropriate under the circumstances. Petitioners' request for relief is atextual—seeking agency involvement in a dispute and federal court supervision while a state court resolves the underlying dispute—and would undermine the purposes of the

statute, to provide for orderly resolution of disputed changes in airport sponsorship.

B. Mandamus relief is also unwarranted on petitioners' unreasonable-delay claim. "The central question in evaluating 'a claim of unreasonable delay' is 'whether the agency's delay is so egregious as to warrant mandamus.'" *In re Core Commc'ns, Inc.*, 531 F.3d 849, 855 (D.C. Cir. 2008) (quoting *TRAC*, 750 F.2d at 79).

Even assuming that FAA had a duty to act on petitioners' request, petitioners have failed to show delay warranting mandamus. Tellingly, the petition provides no clear date of the formal, actionable request triggering the purported duty to act. *See* Pet. 21-25; Pet. 15 (noting "multiple" verbal and other notifications of petitioners' objections to the change in state law). Without the information necessary to determine whether and when an actionable request was pending, the Court cannot determine whether there was any excessive delay.

To the extent that petitioners provide some record of correspondence with FAA about their objections to the state law, *see* Pet. Ex. C, at 66-94, petitioners' requests for FAA action preceded the enactment of the state law. *See id.* at 66 (attaching May 1, 2026, letter

to state authorities and noting that the governor is likely to sign the bill "very soon"); *id.* at 88 (May 14, 2026, request prior to enactment); *id.* at 69 (May 20, 2026, request attaching April correspondence). The state law was signed by the Governor on May 19 and enacted on May 27. *See* S. 2473, 114th Gen. Assemb., Reg. Sess. (Tenn. 2026). And the state law's effective date was July 1, 2026, seven days *after* petitioners sought a writ of mandamus from this Court. Petitioners offer no support for the assertion that the agency could act on their request prior to enactment of the state statute.

Petitioners acknowledge that the statute provides no timeline for the agency to act upon a disputed change in airport sponsorship. That is for good reason. Before the agency can act under Section 757, the statute requires FAA to determine (1) whether there is a qualifying disputed change in airport sponsorship, Pub. L. No. 118-63, § 757(a)(1), (d), 138 Stat. at 1285-1287 (defining "dispute"); (2) whether that dispute has been resolved by consent, judicial decree, or legally-binding agreement, *id.* § 757(b)(1), 138 Stat. at 1286; and (3) whether the sponsor can continue to satisfy its obligations under federal law, *id.* § 757(c), 138 Stat. at 1286. Petitioners have not shown that the

agency's asserted failure to perform each of those steps within a couple of months from petitioners' earliest correspondence, much less weeks from the effective date of the statute, was unreasonable or egregious. Petitioners' claim of unreasonable delay thus fails under any measure. *See TRAC*, 750 F.2d at 79-80.[2]

[2] Petitioners reference an asserted "promis[e]" by the agency on June 2 to provide a "response" by "the end of the … week." Pet. 25 (quotation marks omitted). Although petitioners do not provide a citation for their reference, the petition attaches correspondence from FAA Chief Counsel on June 2 noting that FAA was "aiming to get you a response by the end of the week." Pet. Ex. C, at 92. That sort of response, which is obviously not a promise or a binding timeline, does not provide a basis for mandamus.

## CONCLUSION

The petition for a writ of mandamus should be dismissed or, in the alternative, denied.[3]

Respectfully submitted,

BRETT A. SHUMATE
*Assistant Attorney General*

STEVEN A. MYERS

*/s/ Joshua M. Koppel*
*Joshua M. Koppel*
*Attorneys, Appellate Staff*
*Civil Division, Room 7212*
*U.S. Department of Justice*
*950 Pennsylvania Avenue NW*
*Washington, DC 20530*
*(202) 514-4820*
*joshua.m.koppel@usdoj.gov*

*Of Counsel:*

GREGORY ZERZAN
*General Counsel*

CHARLES E. ENLOE
*Assistant General Counsel*

WILLIAM MCKENNA
*Chief Counsel*

KRYSTYNA BEDNARCZYK
*Assistant Chief Counsel, Federal Aviation Administration*

*Department of Transportation*

September 2026

[3] For similar reasons, this Court should reject petitioners' invitation to convert their mandamus petition to a petition for review. *See* Pet. 20 n.1.

**CERTIFICATE OF COMPLIANCE**

This brief complies with the type-volume limit of the Court's July 30, 2026, order because it contains 4,148 words. This brief also complies with the typeface and type-style requirements of Federal Rule of Appellate Procedure 32(a)(5)-(6) because it was prepared using Word for Microsoft 365 in Century Schoolbook 14-point font, a proportionally spaced typeface.

*/s/ Joshua M. Koppel*
Joshua M. Koppel