**IN THE UNITED STATES COURT OF APPEALS**
**FOR THE DISTRICT OF COLUMBIA CIRCUIT**

---

**No. 26-1166**

---

***In Re*** CHATTANOOGA METROPOLITAN AIRPORT AUTHORITY and the CITY OF CHATTANOOGA, TENNESSEE

*Petitioners,*

*v.*

BRYAN BEDFORD, Administrator of the Federal Aviation Administration; and the FEDERAL AVIATION ADMINISTRATION

*Respondents.*

---

**PETITIONERS' REPLY TO THE RESPONSE OF RESPONDENTS, BRYAN BENFORD – ADMINISTRATOR OF THE FEDERAL AVIATION ADMINISTRATION – AND THE FEDERAL AVIATION ADMINISTRATION, TO PETITION FOR WRIT OF MANDAMUS**

---

John P. Konvalinka
TN BPR No. 001780
DC Circuit Bar No. 67336
GRANT, KONVALINKA & HARRISON, P.C.
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900
Email: jkonvalinka@gkhpc.com

Dated: October 14, 2026

*Counsel for Petitioners*
*Metropolitan Airport Authority and*
*the City of Chattanooga, Tennessee*

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................ 3

GLOSSARY ........................................................................................ 4

INTRODUCTION ................................................................................ 5

I. This Court has jurisdiction to consider and award the relief sought. ............ 11

II. Petitioners have satisfied the requirements for mandamus relief. ................ 15

CERTIFICATE OF COMPLIANCE ........................................................ 19

# TABLE OF AUTHORITIES

**Cases**

*Bennett v. Spear*, 520 U.S. 154 (1997) .......... 14
*Brotherhood of Locomotive Engineers & Trainmen v. FRA*, 972 F.3d 83 (D.C. Cir. 2020) .......... 15
*Cameron v. McDonough*, 1 F.4th 992 (Fed. Cir. 2021) .......... 13
*Conyers v. MSPB*, 388 F.3d 1380 (Fed. Cir. 2004) .......... 12
*Leopold v. Sullivan*, 823 F. Supp. 3d 59 (D.D.C. 2026) .......... 16
*Lovitky v. Trump*, 949 F.3d 753 (D.C. Cir. 2020) .......... 16
*Roberts v. U.S. ex rel. Valentine*, 176 U.S. 221 (1900) .......... 16
*Springs v. Stone*, 362 F. Supp. 2d 686 (E.D. Va. 2005) .......... 13
*U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439 (1993) 12
*United States v. Welden*, 377 U.S. 95 (1964) .......... 12

**Statutes**

1 U.S.C. § 204(a) .......... 12
38 U.S.C. § 5904(c)(1) .......... 13
49 U.S.C. § 44935 .......... 13
49 U.S.C. § 46110(a) .......... 11
49 U.S.C. § 47101 .......... 5, 11
Tenn. Code Ann. § 42-4-102(a) .......... 6

**Other Authorities**

FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757) ..... passim
Section 757(b) .......... 7
Section 757(b)(1)(B) .......... 7
Section 757(c) .......... 8
Section 757(d) .......... 6, 7
Off. of the L. Revision Couns., U.S. House of Representatives, *About Classification of Laws to the United States Code*, https://perma.cc/5RN4-44DJ .......... 11, 12

# GLOSSARY

| | |
|---|---|
| FAA | Federal Aviation Administration |
| City | City of Chattanooga, Tennessee |
| CMAA | Chattanooga Metropolitan Airport Authority |
| State | State of Tennessee |
| Section 757 | Section 757 of the FAA Reauthorization Act of 2024 |
| Takeover Act | Tennessee 2026 Public Acts chapter 978 |

# INTRODUCTION

The Response of Bryan Benford and the Federal Aviation Administration (collectively the "FAA") to the Petition for Writ of Mandamus acknowledges a number of the fundamental contentions asserted by Petitioners supporting their Petition for mandamus relief based on Section 757 ("Disputed Changes of Sponsorship at Federally Obligated, Publicly Owned Airport") of the FAA Reauthorization Act of 2024 (Public Law 118-63, Title VII, § 757), codified at 49 U.S.C. § 47101– Policies, Statutory Notes ("Section 757"). For example, the FAA acknowledges that in the FAA Reauthorization Act of 2024, Congress provided, through the inclusion of Section 757, a sequential process and framework for addressing circumstances in which there is "a disputed change of airport sponsorship" of public, federally obligated airports and for obtaining the approval of the FAA of such changes, which is required for such changes to be effective. *See* FAA Response, p. 14–15. The FAA quotes at length from Section 757 to delineate the sequential process of the Statute. *See* FAA Response, p. 14–15. In acknowledging that the required approval of the Administrator for any "disputed change in airport sponsorship" cannot be obtained until the dispute between the parties is resolved, the FAA states that, pursuant to Section 757(b)(2), the Administrator "… may not evaluate or approve a disputed change of airport sponsorship where a legal dispute is pending before a court of competent jurisdiction." *See* FAA Response, p. 15.

The FAA Response noticeably fails to address Section 757's broad statutory definition of what constitutes a "disputed change of airport sponsorship"[1] and the triggering of the application of the protections provided to parties disputing such changes. But it does acknowledge that the 2026 "legislative action" of the State of Tennessee (the "State") vacates the governing board of the sponsor of the Chattanooga airport, the CMAA (a statutorily recognized agency and instrumentality of the City of Chattanooga),[2] and replaces that governing board, exclusively appointed by the City, with a governing board in which the State appoints the controlling majority of its members (hence, the "Takeover Act"). *See* FAA Response, p. 16–17.

---

[1] Section 757(d) states that the term "**disputed change of airport sponsorship**" means "**any action that seeks to change the ownership, sponsorship, or governance of, or operational responsibility for,** a federally obligated, publicly owned airport, including any such change directed by judicial action or **State** or local **legislative action,** where the airport **sponsor of record** initially **does not consent to such change."** (Emphasis added). Congress's inclusion of this broad definition of what should be considered a "disputed change of airport sponsorship" in subsection (d) of Section 757 is a clear expression of Congressional intent that it did not intend to limit the triggering and application of Section 757 to only those circumstances where there is a change of the "airport sponsor of record to another public or private entity." Although the FAA Response never attempts to assert a contention that Section 757 should only apply to such limited circumstances (which can only be credibly asserted if Congress had never included the language of subsection (d) in Section 757), the State of Tennessee has asserted—and continues to assert—such disingenuous and baseless contention as part of its efforts to avoid the application of Section 757 and the relief sought by Petitioners in this action.

[2] *See* Tenn. Code Ann. § 42-4-102(a).

The FAA Response also acknowledges that prior to the Takeover Act's effective date of July 1, 2026, the FAA was notified that Petitioners disputed the changes imposed by the Takeover Act. *See* FAA Response, p. 17.

The FAA Response acknowledges the Petitioners' state court lawsuit filed against the State on June 18, 2026 wherein the Petitioners, *inter alia*, are disputing the legality of the above-stated legislatively enacted changes imposed by the State's Takeover Act ("State Court Lawsuit"). *See* FAA Response, p. 17. The Petitioner's State Court Lawsuit remains pending and there is not yet "a final, non-reviewable judicial decision" regarding the changes imposed by the State's Takeover Act. *See* FAA Response, p. 17–18; *see also* Section 757(d) and Section 757(b)(1)(B).[3]

Despite all of the above-noted acknowledgements in the FAA's Response, the FAA nevertheless contends that it should not be required by this Court to simply provide notice to the parties that the FAA is adhering to the sequential process pursuant to Section 757. The FAA asserts it should not be compelled by the Court to state that the FAA will not recognize and approve the new changes unless the pending State Court Lawsuit is resolved in favor of the State [*see* Section 757(b)]

[3] Although not acknowledged in the FAA Response, the FAA is aware that the State has proceeded forward with its efforts to implement the legislatively imposed changes in the Takeover Act on or after July 1, 2026, even though there has been no judicial resolution of the disputed changes imposed by the Takeover Act at issue in the Petitioners' State Court Lawsuit.

and the above-noted legislative changes imposed by the Takeover Act are subsequently approved by the FAA. *See* Section 757(c).[4]

The FAA Response primarily argues that the mandamus relief sought by the Petitioners in this lawsuit should be denied because the FAA believes that the involved federal statute does not require the FAA to undertake any action or take any position regarding the dispute between CMAA/City and the State of Tennessee regarding the legality of the Takeover Act while the State Court Lawsuit remains pending. However, Petitioners' relief in this lawsuit does not request or attempt to draw the FAA into the dispute in the State Court Lawsuit. Rather, the Petition in this

---

[4] Contrary to the FAA Response, the relief sought by the Petitioners from the FAA before and after the filing of Petitioners' June 23, 2026 Petition is not merely the relief as incompletely described in the FAA's Response*, i.e.* "… to compel FAA to 'forward a written communication stating and expressly acknowledging that … the FAA does recognize[] and will continue to recognize the currently existing Board of the Chattanooga [Metropolitan] Airport Authority … and the currently existing governance of such authority pending resolution of' a challenge to a recent state law changing the composition of the board of the Airport Authority." Instead, as stated in the Petition, filed by the Petitioners on June 23, 2026, "… the Petitioners requested the FAA to "act" in accordance with the clear statutory mandate and obligation imposed by Section 757 upon the FAA and its Administrator to not approve the change of sponsorship and governance of the Chattanooga airport imposed by the Takeover Act unless or until a resolution of the Petitioners' objections to such change occurs, and to acknowledge that until such resolution is reached, the FAA will "act" in accordance with and fulfill its clear obligations under Section 757 by recognizing the current board membership and governance of the Chattanooga airport [as it existed at the time of the filing of the June 23, 2026 Petition] so that the clear and overriding purpose of Section 757 is achieved and protections for existing sponsors provided by Section 757 are fulfilled by the FAA and its Administrator." (See Petitioners' June 23, 2026 Petition, p. 19).

federal lawsuit simply requests that the FAA be ordered to act in accordance with the non-discretionary provisions of Section 757 regarding the sequential process for addressing "disputed changes in airport sponsorship," so that the Petitioners can receive the protections Congress intended through that statute.[5]

---

[5] The overriding purpose and context of the enactment of Section 757 was an intentional effort by Congress to provide the additional heft of statutory protections to locally governed airports from being involuntarily taken over through state legislative enactment that had been provided by FAA policies that were being ignored by the states and perhaps the FAA. Section 757 was designed to provide a non-discretionary statutory framework for preserving the status quo until the local authorities had the opportunity to contest such state legislative enactments in the courts and obtain a judicial resolution of such dispute. *See* the statements of U.S. Senator Reverend Raphael Warnock, who served on the Senate committee which approved the FAA Reauthorization Act of 2024, reflected in the press release issued by his official website dated May 24, 2024 (printed copy of which is attached hereto as Exhibit 1)

In addition to his statements that, "It's only right that the City of Atlanta continues to control this gateway to the city [the Atlanta airport]," and "I was proud to secure these meaningful protections to guard against cynical state politicians trying to seize control of the airport," Senator Warnock's official website page includes the following context:

> "The Georgia State Legislature passed … a measure in 2019 to takeover control of ATL [the Atlanta airport] from the city of Atlanta. The Senator's provision, which he secured after offering it as an amendment during the Commerce committee's FAA markup earlier this year, codifies certain protections and processes in the event of a disputed change of sponsorship at a federally-obligated, publicly owned airport. This provision would make it harder for a hostile FAA to support such a takeover; … ."

(See Exhibit 1). This explains that the codification of such policies in Section 757 of the 2024 Act was to address the ongoing threats of efforts such as the Georgia

The FAA's failure to act in accordance with Section 757 as requested by the Petitioners has allowed the above-noted legislative changes imposed by the Takeover Act to go into effect. By not acting, there has been an unlawful de facto approval of the changes by the FAA in contravention of the statutorily imposed requirements of Section 757.

Nothwithstanding the above, the FAA contends that the relief requested by the Petitioners in this lawsuit should be denied because this Court lacks jurisdiction to award the relief requested by the Petitioners in this lawsuit. Alternatively, the FAA contends that even if the Court has jurisdiction with respect to the Petitioners' claims for relief, the claims for relief requested do not satisfy the requirements for obtaining mandamus relief. Both contentions should be rejected.

---

General Assembly's legislation to takeover Atlanta's airport in 2019, despite the existence of the FAA policies. Congress was concerned that a "hostile FAA" may choose to disregard the non-discretionary protections to be provided to local authorities while judicially contesting such state takeovers.

The clear and purposeful intent of Congress was preserving the status quo for the protection of local authorities while exercising their rights to judicially contest such takeovers. Congress viewed it necessary that those taking over the airports obtain a judicial resolution of the dispute prior to such changes even being considered and approved by the FAA. This Congressional goal would be entirely undermined if the positions of the FAA were accepted in this case.

## I. <u>**This Court has jurisdiction to consider and award the relief sought.**</u>

A. The FAA's primary contention in its Response is that this Court does not have jurisdiction to decide this matter because an FAA order or action pursuant to Section 757 is not "under" part B, which would subject it to review pursuant to 49 U.S.C. § 46110(a). The FAA's reasoning is that because Section 757 was placed as a statutory note to 49 U.S.C. § 47101—a statute the FAA admits would grant this Court jurisdiction—rather than in the "principal text," it is not a statute codified by Congress and thus not "under" part B. In support of its position, the FAA cites both caselaw and text from the Office of the Law Revision Counsel's ("OCLR") website that wholly contradict the FAA's position. The OCLR states that "[s]tatutory notes are provisions from laws that are placed in the Code so as to follow the text of a Code section . . . A statutory note can consist of as much as an entire law or as little as a clause. While the decision to classify a freestanding provision as a section or a statutory note is an editorial judgment . . . Statutory notes also include provisions that are somewhat less than general or less than permanent, but still relate to existing Code sections, such as those requiring studies and reports, implementation of regulations, or the establishment of a task force." *See* Off. of the L. Revision Couns., U.S. House of Representatives, *About Classification of Laws to the United States Code*, <u>https://perma.cc/5RN4-44DJ</u>. It continues, "[i]t is important to understand that **whether or not a provision is classified to the Code, and if classified, whether or**

**not it is set out as a section or a statutory note, does not in any way affect the provision's meaning or validity.**" *Id.* (emphasis added). This understanding is echoed in numerous federal decisions, including the cases the FAA cited for the opposite position that it takes. *See, e.g.*, *United States v. Welden*, 377 U.S. 95, 98 (1964); *U.S. Nat. Bank of Oregon v. Indep. Ins. Agents of Am., Inc.*, 508 U.S. 439, 448 (1993) ("Though the appearance of a provision in the current edition of the United States Code is 'prima facie' evidence that the provision has the force of law, 1 U.S.C. § 204(a), it is the Statutes at Large that provides the 'legal evidence of laws,' § 112, and despite its omission from the Code section 92 remains on the books if the Statutes at Large so dictates."); *Conyers v. MSPB*, 388 F.3d 1380 (Fed. Cir. 2004) (rejecting an appellant's emphasis on the placement of the relevant language as a note—rather than in the text of the statutory section—stating "the fact that this provision was codified as a statutory note is of no moment.").

In *Welden*, rather than emphasizing that the text of the Code is paramount, as the FAA's response seems to suggest, the Supreme Court found that the arrangement by a codifier "should be given no weight. 'If construction (of a section of the United States Code which has not been enacted into positive law) is necessary . . . we must read it in the context of the entire Act, rather than in the context of the 'arrangement' selected by the codifier."). 377 U.S. at 98 n.4.

This is not an unsettled question in federal law. The Eastern District of Virginia explained that "the fact that [a provision] was attached as a statutory note to 49 U.S.C. § 44935, as opposed to being codified as an independent provision, does not limit its applicability. The laws of the United States are evidenced by the Statutes at Large, not by their placement within the United States Code." *Springs v. Stone*, 362 F. Supp. 2d 686, 697 n.7 (E.D. Va. 2005). The Federal Circuit likewise dealt with a similar situation where a party asserted "that the 'Effective Date' section of the Act has no substantive effect on 38 U.S.C. § 5904(c)(1) because it 'does not appear in the text of the statute itself' and is 'essentially ministerial language.'" *Cameron v. McDonough*, 1 F.4th 992, 995 (Fed. Cir. 2021). The Federal Circuit rejected the argument, finding "it is well-established that the placement of a provision in the United States Code as a note is not dispositive." *Id.* Thus, the FAA's attempt to minimize the effect of Section 757 due to its placement in the Code is unavailing and this Court does have jurisdiction as outlined in the Petition.

B. The FAA next argues that it has not issued an order or declined to issue an order under Part B of the Statute that would give rise to this Court's review. In making its case, the FAA admits that if it had "issued an order declining to recognize a change in sponsorship on the basis that the proposed sponsor did not satisfy certain requirements of Part B . . . or if a mandamus petitioner challenged FAA's failure to issue such an order—then this Court might have jurisdiction." *See* FAA Response,

p. 14. Yet the inverse has happened, and it is just as much subject to review by this Court as the example provided by the FAA. It is undisputed that the Takeover Act vacated the board of the CMAA and the Takeover Board is acting as the new sponsor of the Chattanooga airport. In the State Court Lawsuit, the Takeover Board submitted that the "FAA issued Grant Agreement No. 3-47-0009-087-2026 in the amount of $661,972" to the Takeover Board. *See* Exhibit 2, p. 7. Thus, the FAA has obligated new grants to the Chattanooga Aiport currently being run by the Takeover Board. This is not insignificant. AIP grants commit congressionally appropriated funds based on FAA's determination that the recipient has and will continue to comply with federal law requirements. The FAA could not have done so without treating the Takeover Board as authorized to act for CMAA—the precise question FAA claims it has not considered. It has made a de facto determination of the change of sponsorship of the Chattanooga Aiport even if it claims it is standing still.

The FAA claims it has not acted as it did not issue a formal order expressly approving or disapproving the governance change, and that there is no final action to review. However, finality exists if the agency's decision-making has been consummated and legal consequences flow from it. *See Bennett v. Spear*, 520 U.S. 154, 177–78 (1997). Both are present here: the FAA's opportunity to act under Section 757 came and went before the change took effect, and the agency thereafter obligated federal funds to the new sponsor. This Court has held that an agency cannot

"take undisputedly final actions with concrete legal consequences and yet evade judicial review just by declining to formally paper them internally." *Brotherhood of Locomotive Engineers & Trainmen v. FRA*, 972 F.3d 83, 102 (D.C. Cir. 2020). The FAA's silence through the statutory trigger date was not neutrality; it was a determination that the governance change could proceed without the mandatory process. Petitioners' submit that the FAA's distinction between its (in)action and the example it admits would provide jurisdiction to this Court is only a difference in form. The FAA's inaction when it was required to act was a de facto approval of the Takeover Board's change of sponsorhip.

## II. <u>Petitioners have satisfied the requirements for mandamus relief.</u>

A. The FAA argues there is no "crystal-clear legal duty" that it act under the circumstances. It contends that Section 757 "does not even plausibly" require the FAA to issue a letter to state officials that it will continue to recognize the original board and not the new one. FAA Response, p. 16. Yet, the FAA has certainly taken such action before. When a similar State takeover was attempted in 2023, the FAA told the Metroplitan Nashville Airport Authoirty in no uncertain terms:

> Please be advised that **the FAA will continue to recognize the existing Board until such time as the Chancery Court rules on the issue**. In the event that a new Board is appointed pursuant to the Court's ruling on the legislation, the FAA will require the newly appointed Board to satisfy and honor the federal obligations the Authority has with the FAA.

Letter from FAA Associate Administrator for Airports, June 26, 2023 (Exhibit 3), at 2 (emphasis added). Petitioners submit that the FAA issued such a letter in 2023 because a plain-reading of Section 757 requires the FAA to act when a new board tries to take the reins from a current airport sponsor. This requirement is not discretionary. It may require construction of Section 757, but "[e]very statute to some extent requires construction by the public officer whose duties may be defined therein. Such officer must read the law, and he must therefore, in a certain sense, construe it, in order to form a judgment from its language what duty he is directed by the statute to perform." *Roberts v. U.S. ex rel. Valentine*, 176 U.S. 221, 231 (1900).

The District Court of Washington, D.C. recently explained that a "writ may issue to compel officers to perform purely ministerial duties when imposed upon them by law, even when the refusal of an officer to perform the act is based on an erroneous construction by him of the statute." *Leopold v. Sullivan*, 823 F. Supp. 3d 59, 82 (D.D.C. 2026) (cleaned up). In other words, when the alleged duty arises under a statute, "mandamus actions are [not] ruled out whenever the statute allegedly creating the duty is ambiguous." *Lovitky v. Trump*, 949 F.3d 753, 760 (D.C. Cir. 2020). Instead, "the court must interpret the statute and if, 'once interpreted,' the statute 'creates a peremptory obligation for the officer to act, a mandamus application will lie.'" *Id.* Petitioners submit that the FAA previously read and

construed Section 757 as Petitioners do in the instant case. That is because it is the logical reading of the statute prescribing the crystal clear duty of the FAA to act.

The next contention by the FAA—that Petitioners have "other adequate means of relief" for the relief requested—is misleading and should be rejected. The FAA, again, premises that contention on an inaccurate description of the relief being sought by the Petitioners in this action. *See* FAA Response, p. 27 ("petitioners have other adequate means of relief for their dispute over the change in the composition of the board of the Airport Authority. Petitioners may seek to resolve their challenge to the state law in court, as they have done.").

As previously stated, Petitioners' relief in this lawsuit does not attempt to draw the FAA into the dispute in the State Court Lawsuit. Rather, this action simply requests that the FAA be ordered to act in accordance with Section 757.

The State Court Lawsuit recently rejected a similar argument by the State in its Motion to Stay when the State claimed Petitioners had "another adequate means of relief." As more fully articulated in Petitioners' response to that Motion, attached hereto as Exhibit 4, pp. 4-7, that argument fails because the relief sought in both actions is of a different type and is against different parties. As such, the FAA's contention that Petitioners can receive other adequate relief is incorrect and should be rejected.

B. Finally, the FAA contends that if it was required to act, the accusation that it unreasonably delayed fails because there was no formal request triggering the duty to act. Anticipating Petitioners' response to such a statement, the FAA acknowledges that the Petitioners did correspond with the FAA prior to the Takeover Act being enacted and then becoming effective. In the Petitioners' correspondence, Petitioners made it clear that they were working under specific timelines to try to obtain the FAA's action prior to the Takeover Act's implementation. *See* Exhibit 5 attached hereto. Under the circumstances of the case, it was evident what the delay would mean and how such delay was egregious due to its consequences. The FAA's attempt to minimize that or plead ignorance is unavailing.

Respectfully submitted,

**GRANT, KONVALINKA & HARRISON, P.C.**

By: *s/ John P. Konvalinka*
John P. Konvalinka
TN BPR No. 001780
DC Circuit Bar No. 67336
*Counsel for Petitioners*
633 Chestnut Street, Suite 900
Chattanooga, Tennessee 37450-0900
(423)756-8400 – Telephone
(423)756-6518 – Facsimile
jkonvalinka@gkhpc.com

## CERTIFICATE OF COMPLIANCE

I certify that this document complies with the type-volume limitations of Fed. R. App. P. 21(d)(1) and this Court's Per Curiam Order filed on July 30, 2026 permitting the filing of a reply, not to exceed 3,900 words, because, excluding the parts of the document exempted by Fed. R. App. P. 32(f), this document contains 3,815 words. This document complies with the typeface and type-style requirements for Fed. R. App. P. 32(a)(5)-(6) because it has been prepared in a proportionally spaced typeface using Microsoft Office Word, Times New Roman 14-point font.

This 14th day of October, 2026.

*s/ John P. Konvalinka*

## CERTIFICATE OF SERVICE

Pursuant to Rule 15(c) of the Federal Rules of Appellate Procedure, I hereby certify that I have this 14th day of October, 2026, caused to be served copies of the foregoing Opposition Brief upon counsel for Respondents and for the Intervenor by filing it with the Court's CM/ECF system, where they are all currently registered.

*s/ John P. Konvalinka*